SAMUEL BEAR v. COMMISSIONERS OF BRUNSWICK COUNTY.

(Decided March 21, 1899).

*Mandamus—School   Fund—Public   Fund—Judgment   Es toppel—Waiver—Necessary   Expenses--Constitution,   Art. VII, Sec. 7.*

1. School orders issued by the school committee upon the treasurer of the County Board of Education, under the former system, were payable out of the School Fund only, and were not a valid charge upon the public funds of the county.

2. Judgments rendered upon school orders against the County Commissioners will not be enforced by *mandamus*, not being for necessary expenses within the purview of Art. VII, Sec. 7 of the Constitution.

3. An estoppel, to be made available, must appear in the pleadings, otherwise it is waived and the trial proceeds upon the merits.

4. While *mandamus* is in the nature of an execution, it is also in the nature of a civil action, with summons, pleadings, and Code practice. A party applying for it to compel the County Commissioners to levy a tax to pay his judgment against the county, must show affirmatively that the consideration of the debt upon which the judgment was recovered, was for an ordinary or necessary county expense, or had been sanctioned by a vote of the people.

PETITION to rehear this cause, decided at February Term, 1898, and reported in 122 N. C., 434.

Petition allowed.

*Messrs. E. K. Bryan* and *Frank McNeill,* for defendants (petitioners).

*Messrs. J. D. Bellamy* and *Shepherd & Busbee, contra.*

MONTGOMERY, J., delivers the opinion.

FAIRCLOTH, C. J., delivers dissenting opinion, concurred in by FURCHES, J.

MONTGOMERY, J. This case is before us on a petition to rehear, the first opinion having been filed at the Spring Term, 1898, and published in 122 N. C., 434. After further argument and a closer investigation, we have arrived at the conclusion that there was error in the former opinion in its reversal of the judgment of the Superior Court. That judgment ought to have been affirmed.

The plaintiff in his complaint alleged that the defendants were indebted to him in the sum of . . . . dollars due by eight judgments originally had in a Court of a Justice of the Peace, and afterwards docketed by transcript in the office of the Clerk of the Superior Court of Brunswick County, and prayed judgment that the defendants be compelled to levy a tax to pay the judgments and costs. The defendants in their answer admitted that the judgments were procured as alleged, but averred that they were not valid and binding against the defendants, for the reason that they were obtained against a former Board of Commissioners on school claims for which neither the defendants nor their predecessors were liable in law. The defendants further aver that the judgments were obtained on certain school orders issued about the year 1886 by the school committeemen of certain school districts of Brunswick County upon the Treasurer of the County Board of Education, and that they were not a valid charge against the defendants, the Board of Commissioners, or a charge upon the public funds of the county, or upon any

other fund except those expressly set apart for school purposes. And for a further defence the defendants aver that Section 7, Article VII of the Constitution of North Carolina prohibits any tax from being collected or levied by any county, city or town, or other municipal corporation, except for the necessary expenses thereof, unless by a vote of the majority of the qualified voters therein; and the defendants aver that the consideration upon which the judgments were had was not for the necessary expenses of the county or for a debt contracted in the manner provided by the Constitution.

When the case came on for trial a jury trial was waived and it was agreed that his Honor who presided should find the facts, and the case was heard by the Court by the consent of counsel of the plaintiff and of the defendants. What facts could have been in the minds of the counsel, except the facts connected with the consideration of the claims on which the original judgments were procured, and those connecting the judgments of 1894, docketed in the Superior Court by transcript, as being the same judgments which were originally rendered by the Justice of the Peace in 1888? No other facts could have been referred to, for they were raised by the pleadings, and the defendants in their answer had admitted that the judgments had been obtained by the plaintiff, as set out in his complaint. The plaintiff having failed to plead his judgments in estoppel of the matter est out in the answer, or to demur to the answer, waived his rights as to any advantage which the law had given to his position, and by his agreement to submit the facts to the finding of the Court, went to the hearing on the merits of the original consideration upon which the judgments were granted. "Numerous decisions in this country and England hold that where a party has an opportunity to plead an estoppel, and

voluntarily omits to do so, but goes to the issue on the facts, he thereby waives the estoppel, and the jury is at liberty to find acording to the facts of the case. So, where the advantage might have been taken of an estoppel by means of a demurrer, and the party fails to so take advantage of it, he will be held to have waived the estoppel." 8 Am. & Eng. Enc., p. 13 and cases there cited. If the plaintiff intended to avail himself of the full benefit and effect of his judgments, it was incumbent on him to do so by some proper pleading because of the nature of defendant's answer, for, though *mandamus* is in the nature of an execution, yet it is in the nature of a civil action; it is commenced by summons and the pleadings and the practices are the same as are prescribed for the conducting of civil actions. The Code, section 623.

His Honor found as a fact upon the evidence, none of which was objected to, that the original judgments were obtained upon certain school orders issued during the year 1886, and that the judgments of 1894 in the Superior Court were the same judgments which were obtained before the Justice of the Peace in 1888, and that there was nothing in the record or judgment of 1894 to show what the cause of action was, except that they were brought on former judgments. Now, upon his Honor's findings of fact, the legal question arises, were school orders issued in 1886 a debt for which the county was liable, and for which the Board of Commissioners could be made to provide by taxation? We think not.

The law in force at the time when the school orders upon which the plaintiff's action was brought were issued, was The Code, chapter 15, Vol. 2, as amended by chapter 174 of the Acts of 1885. Section 2551 of The Code provides that the County Board of Education shall, on the first Monday in

January of each year, apportion among the several districts all school funds, specifying how much of the same is apportioned to each race, and give notice thereof to the school committees of the several districts of the county. It is further provided in the same section that the sums thus apportioned to the several districts shall be subject to the orders of the school committees thereof, for the payment of the school expenses authorized by law. In section 2555 of The Code it is provided that "all orders upon the Treasurer of the County Board of Education for school money for the payment of teachers, duly countersigned by the County Superintendent of Public Instruction, and all orders for the purchase of cites for school-houses, and for the costs of building, repairing and furnishing school-houses, shall be signed by the school committee of the district in which the school is taught, or in which the site or school-house is situated, which orders, duly endorsed by the person to whom the same are payable, shall be the only valid vouchers in the hands of the Treasurer of the County Board of Education, to be paid out of the funds apportioned to the district in which the school-house is erected."

The County Treasurer of each county was required to receive and disburse the public school funds, not under his general bond, but under a separate bond conditioned for the faithful performance of his duties as Treasurer of the County Board of Education. The County Board of Education were empowered, if they deemed it necessary, to require the Treasurer of the County Board of Education to strengthen his bond, and for any breach of that bond action was to be brought, not by the County Commissioners, but by the County Board of Education. The Code, section 2554.

The Treasurer of the County Board of Education was required to open accounts with each public school district, and report yearly to each school committee the amount appor-

tioned to the respective districts for the year, and to the
County Board of Education the amounts received from all
sources for public school purposes.

From this review of the law in force when the school
orders were issued, upon which the plaintiff's judgments
were obtained, it appears that there was a complete separa-
tion of the school funds from the general county fund upon
the apportionment being made, and from that time all con-
trol of the same by the County Commissioners ceased; that
the funds were taken charge of by the Treasurer of the Board
of Education under a separate bond; that the disbursements
were made by that officer under orders signed by the school
committees; that the accounts of the school fund were kept
by that officer and the several school committees, and a re-
port, yearly, to the County Board of Education made
of all receipts of school funds by him, and the amount appor-
tioned to each district was the fund out of which school
orders were to be paid.

The county, therefore, through the Board of Commission-
ers, was not liable for the debt upon which those orders were
issued.

If the amount apportioned to the district or districts, upon
whose committee or committees the orders were drawn, had
been in the hands of the Treasurer of the Board of Educa-
tion, and he had defaulted in their payment, then the law re-
quired action for such defalcation to be instituted against
that officer and his bond. If there never had been in the
treasurer's hands any funds to meet those orders because
they were improperly issued, then there was no liability on
either the county or the treasurer.

But besides the view of this case, as expressed above, we
are of the opinion that before *mandamus* can be issued to
compel the Board of Commissioners of a county to levy a

124—14

tax to pay a judgment against the commissioners, the plaintiff—judgment creditor—must show affirmatively by the record or other competent evidence that the consideration of the debt, upon which the judgment was obtained, was of such a character as to fall under the head of ordinary or necessary county expenses. Any other view of the law would enable a Board of County Commissioners to levy a tax to pay a debt reduced to judgment by confession or by default, which debt, under section 7 of Article VII of the Constitution, the county would be prohibited from contracting, unless the question was submitted to a vote of the qualified voters of the county. Such a course would in effect be a convenient method, whenever the County Commissioners might choose to do so, of destroying a most salutary provision of the Constitution. It would be equivalent to holding that, by a rule of pleading, a plain provision of the Constitution can be abolished. No technical learning based on the rules of pleading can force us into such a conclusion.

The prayer of the petitioners must therefore be granted. The case must be reheard, and the judgment of this Court entered therein at the Spring Term, 1898, must be set aside, and judgment entered at this term affirming the judgment of the Superior Court. Prayer of the petitioners granted.

FAIRCLOTH, C. J., dissenting: On this petition to rehear I am unable to agree with the opinion of a majority of the Court.

The facts: The plaintiff in 1888 instituted several actions before a Justice of the Peace against defendant Board of County Commissioners. The only matter filed in the nature of a complaint was "Claim," and stating the amount of each. No denial of the claim, nor any defence, was made by the defendant, and judgments were entered in each case for the amount of the claim and costs. These judgments were not

paid and they were docketed in the Superior Court on September 29, 1893.   In 1894, the plaintiff obtained judgments upon these former judgments, and it does not appear that defendants then made or offered any defence.

In the present action, by consent of parties, his Honor found the facts in these words:   "That the judgments sued on in the complaint were obtained in the year 1894 in certain actions brought on former judgments obtained in 1888; that the cause of action on which said judgments of 1888 were obtained were school claims, as alleged in the answer; that there was nothing in the record of judgments of 1894 to show what the causes of action were, except that they were brought on former judgments."

This action for *mandamus,* to compel defendants to levy a tax and pay said judgments, was before us at last term by appeal from the Superior Court, refusing to grant the writ, and this Court held that was error, and reversed the judgment below.   In this proceeding, the defendants answer and deny the validity of the judgments, and plead section 7, Article VII of the Constitution, and aver that said school claims are not a necessary expense of the county.

I shall not further remark on the effect and force of the judgments, as I did so for the Court in this case, *supra.*   The case of *Young v. Henderson,* 76 N. C., 420, is decisive.   The Court now admits the integrity of the judgments—that they cannot be impeached, and that the matters therein in issue are *res adjudicata*—and puts its opinion on the ground that the consideration is a debt, not for a necessary county expense. Passing over the competency of evidence, in the executionary stage of the cause, to go behind the judgments to set up a defence which was open to the defendants before the judgments were entered, we must consider whether the expense of the public common county school system is a necessary expense. What is a necessary expense is a question for the Court,

whenever the question arises. It is necessary for the good, safety and happiness of the whole people that certain benefits and improvements shall be recognized as necessary expenses. The public school system tends to improve the manners, morals, and material condition of the people in the march of civilization. This Court has often said that the building of court-houses, public roads and bridges are necessary expenses. *Vaughan v. Commissioners,* 117 N. C., 434. We have said that water-works is not a necessary expense of a corporation *(Charlotte v. Sheppard,* 120 N. C., 411), and that electric lights are not a necessary corporate expense. *Mayo v. Washington,* 122 N. C., 5.

In *Lutterloh v. Commissioners,* 65 N. C., 403, it was held, "Where a party has established his debt against a county by *judgment,* and payment can not be enforced by an execution, he is entitled to a writ of *mandamus* against the Board of Commissioners of said county, to compel them to levy a sufficient tax to pay off and discharge his said judgment." It does not appear that it then occurred to any layman or lawyer that executionary process was inhibited by Article VII, section 7 of the Constitution, which was then in force. The opinion of the Court refers briefly to that case, but fails to distinguish it from the present case. Every necessary expense in the whole list is such by force of the law, written or unwritten. Public education is a cherished object of our Constitution and of our Legislature and people. It is of vital importance to society and to the State. Is it less so than a public bridge across a stream which can be crossed by a common ferry boat?

The Constitution, Article I, section 27, declares that "The people have the right to the privileges of education, and it is the duty of the State to guard and maintain that right." Article IX, section 4, makes a most liberal provision for funds

for the purposes of education, and commands that they "shall be faithfully appropriated for establishing and maintaining in this State a system of free public schools, and for no other uses or purposes whatsoever." Article IX, section 15, empowers the Legislature to *require* every child within the prescribed age to attend the public school, unless educated by other means.

Finally, Article IX, section 2, declares "that the General Assembly .... *shall* provide by taxation, and otherwise, for a general and uniform system of public schools, wherein tuition shall be free of charge to all the children of the State."

I have thus quoted to show how important and necessary the Constitution considers the subject of public education. Every one knows that much machinery is necessary to perform this command of the organic law. Are not teachers necessary? And who will teach if his undisputed "school claim" can not be collected, as this plaintiff's can not be, if the remedy he prays for is withheld by this Court? The Court cites no authority whatever in support of its position, except the case of *Rodman v. Town of Washington,* 122 N. C., 39. Let us examine that case: The defendants were proceeding to levy and collect a tax under a special Act (Laws 1897, chapter 343) to meet the expenses of a corporation graded school, and the plaintiff obtained an injunction on the ground that the Act was not passed according to the Constitution, Article VII, section 7, as construed by a majority of this Court. This was admitted by the defendants, but they insisted that the expense was a "necessary expense" in the spirit of that Article. It was also admitted that the tax, if levied, would largely exceed the constitutional limit of taxation. The Court held that, while it favored public education, it could not hold that a tax over and beyond the

constitutional limit is a necessary corporation tax, that the Act in that respect was void, and affirmed the judgment. I am unable to see how that case supports the defendant's contention as to a necessary county expense to support the public school system, when neither the record nor the opinion refers to that question.

My conclusion is that the opinion ought to be dismissed, and that the writ of *mandamus* should issue.

FURCHES, J., concurring in the dissenting opinion.