STACY, J., concurring; WALKER and HOKE, JJ., concurring in both opinions; CLARK, C. J., dissenting. *Page 500 
At the session of 1901 the General Assembly constituted the Corporation Commission a Board of State Tax Commissioners, and imposed upon such board certain duties relative to the listing, assessment, and taxation of property. The statutes defining and circumscribing these duties, as modified or amended from time to time, have since been continued in force and effect; but on 8 March, 1921, the duties of the State Tax Commissioners were transferred to the State Department of Revenue to be performed after 1 May by the Commissioner of Revenue, except as otherwise provided, and thereupon the Tax Commission became functus officio. The original summons in the proceeding was issued against the Board of State Tax Commissioners on 6 May, 1922, and purports to have been served on the chairman of the board, but A. D. Watts, the commissioner of revenue, was thereafter made a party defendant, and the suit is prosecuted against him alone.
On the day the summons was issued the plaintiff filed his "complaint and petition." After reciting certain duties of the Tax Commission, the constitutional mandate that property shall be taxed by a uniform rule, and the statutory provisions for listing corporate property for taxation, he alleges in substance that all "exempting statutes" are unconstitutional, that shareholders in corporations by means of "device, camouflage, and fraud" evade the payment of all taxes except an "irreducible minimum on their visible property," and bear none of the burdens of government, but leave them to be borne by the "rural homesteader" and the dwellers in cities and towns. He further alleges that the contention that a tax on stocks is paid by the corporations in which they are held is a "smoke screen to hide the duplicity" of the owners from the "burdened taxpayers of the visible property of North Carolina," and that the "board of State taxation" should require not only the capital stock of corporations, but the stocks held by individuals to be listed for taxation at their true value in money.
The defendant demurred, and moved to dismiss the petition on the ground that it does not state a cause of action, and that the court had no jurisdiction to grant the relief demanded. His Honor sustained the demurrer, and the plaintiff appealed.
Shorn of verbiage, the contention of the plaintiff is this: That the Constitution of North Carolina, Art. V, sec. 3, provides that "laws shall *Page 501 
be passed taxing by a uniform rule all moneys, credits, investments in bonds, stocks, joint-stock companies, or otherwise"; that stockholders should therefore list for taxation in their own names all shares of stock held by them; that all statutes purporting to exempt the individual owner from the necessity of listing his stocks in this manner are void and of no effect; and that it is the duty of the defendant to enforce compliance with this construction of the constitutional provision.
On the other hand, the defendant insists that the plaintiff's contention is based on a misconception both of the constitutional requirement and of the laws enacted for the purpose of carrying it into effect, and that the existing method of taxing property, corporate and individual, is in strict compliance with the mandate of the organic law.
These respective contentions illustrate a situation out of which have arisen two theories concerning the taxation of investments in the stocks of corporations. The first is that the statutory method just referred to is such an evasion of Article V, section 3, of the Constitution as exempts from taxation practically all shares of stocks in corporations (with a few exceptions) organized under the laws of North Carolina, and that while the corporation should pay a tax upon the capital stock, the shareholder should likewise pay a tax upon his investment in or contribution to such capital stock, the alleged reason being that the shares or certificates of stock are the individual property of the shareholder, and are separate and distinct from the capital stock of the corporation. The advocates of the other theory concede that the property of a shareholder in the stock of a corporation is for certain purposes, and in a restricted sense distinct from the property owned by the corporation as a legal entity, but they say that shares of stock are, and for many years have been, returned for taxation by the proper officer of the corporation on behalf of the owner, and that the tax assessed thereon is paid by the company; that the situs of the shares for taxation is transferred from the residence of the owner to the place where the principal office of the corporation is situated, and that this method assures the taxation of all shares of stock, many of which, especially those of nonresident owners, had previously escaped taxation; that in no other way is the stockholder relieved of the direct payment of tax on his stock; and that under these circumstances the payment of a tax on his shares by the individual owner would amount to double taxation, which, while not prohibited by the Constitution, has not been sanctioned by the General Assembly. It is further insisted that this method has been adopted by the Legislature as the most effective means of securing the best financial returns from such taxation, and that provision has been made for imposing upon all classes of assessable corporate property, real and personal (including the capital stock, the franchise, and shares of stock), a just and equitable proportion of the burdens of government. *Page 502 
We have referred to these theories (to the first of which the plaintiff evidently adheres) for the purpose of showing the background of the plaintiff's position and the basis upon which his complaint is made to rest; and upon inspection of the complaint, the demurrer, the motion to dismiss, and the argument of counsel, we have concluded that there are several cogent reasons for holding that the instant proceeding has been improvidently instituted, and that it cannot be maintained.
In the first place, the relief sought could not be obtained in any event without the exercise of legislative functions, and the plaintiff's fatal error is found in the assumption that such functions may be exercised by the courts, notwithstanding the constitutional separation of the several departments of the government. The Declaration of Rights provides: "The legislative, executive, and supreme judicial powers of the government ought to be forever separate and distinct from each other." Art. I, sec. 8. As to the wisdom of this provision there is practically no divergence of opinion — it is the rock upon which rests the fabric of our government. Indeed, the whole theory of constitutional government in this State and in the United States is characterized by the care with which the separation of the departments has been preserved, and by a marked jealousy of encroachment by one upon another. In Black's Constitutional Law it is said: "It is a fundamental maxim of political science, recognized and carried into effect in the Federal Constitution and the constitutions of all the states, that good government and the protection of rights require that the legislative, executive, and judicial powers should not be confided to the same person or body, but should be apportioned to separate and mutually independent departments of government" (p. 83). "As the rule, it may be said that the American state constitutions now divide the powers of government, and provide that no person or body belonging to one branch shall exercise powers or functions belonging to the others. But even in the absence of such an explicit declaration, the creation of the several departments and the description of their respective powers would be sufficient to secure each against encroachments by the others" (ibid., p. 86).
The power to levy taxes is vested exclusively in the legislative department of the government. Constitution, Art. V. "Within constitutional limits, the power of the Legislature in matters of taxation is supreme, and its action cannot be revised or annulled by the judicial department. Nor can the courts be authorized or required by statute to levy and collect taxes, as that is a legislative function and not judicial." Black Con. Law, 93. And Judge Cooley says: "It must always be conceded that the proper authority to determine what should and what should not constitute a public burden is the legislative department of the State. This is not only true for the State at large, but it is true, *Page 503 
also, in respect to each municipality or political division of the State; these inferior corporate existences having only such authority in this regard as the Legislature shall confer upon them." Cons. Lim., 698.
The courts have absolutely no authority to control or supervise the power vested by the Constitution in the General Assembly as a coordinate branch of the government. They do not assume to direct the course of legislation or to share in the making of the laws or to exercise any power to repeal a statute. They concede that the fundamental law guarantees to the Legislature the inherent right to discharge its functions and to regulate its internal concerns in accordance with law without interference by any other department of the government, and that their jurisdiction is limited to interpreting and declaring the law as it is written. It is only when the Legislature transcends the bounds prescribed by the Constitution, and the question of the constitutionality of a law is directly and necessarily involved that the courts may say, "Hitherto thou shalt come, but no further."
It is in the light of these principles that we must consider the following provision, which has been enacted at each biennial session of the Legislature since 1887: "Individual stockholders in any corporation, joint-stock association, limited partnership, or a company paying a tax on its capital stock shall not be required to pay any tax on said stock or list the same, nor shall corporations legally holding capital stock in other corporations upon which the tax has been paid by the corporation issuing the same be required to pay any tax on said stock or list the same." Laws 1921, ch. 34, sec. 4.
It is evident, therefore, that the plaintiff has resorted to the courts for a writ of mandamus to compel the defendant to subject himself to liability to removal from office by doing an act which the law expressly forbids, and the futility of his application is found in the principle, unquestioned and fundamental, that an officer, inferior or other, is not responsible at the suit of private parties for the nonperformance of an act omitted by him in obedience to the commands of the law. This has been repeatedly decided. In Wilson v. Jenkins, 72 N.C. 5, there was an application for a mandamus to compel the Auditor of the State to audit and the Treasurer to pay certain coupons representing interest on the bonded debt of the State. The Legislature had passed an act prohibiting the Auditor from recognizing any claim for principal or interest on any portion of the bonded debt, and prohibiting the Treasurer from paying any claim for such interest, except as therein provided. The trial judge rendered judgment in favor of the defendant, and Chief Justice Pearson, affirming the judgment, said: "The General Assembly has absolute control over the finances of the State. The Public Treasurer and Auditor are mere ministerial officers, bound to obey the orders *Page 504 
of the General Assembly. It follows that the courts have no power to compel, by mandamus, the Public Treasurer to pay a debt which the General Assembly has directed him not to pay, or the Auditor to give a warrant upon the Treasurer which the General Assembly has directed him not to give, unless the act of the General Assembly be void as violating the Constitution of the United States or of this State." To the same effect are Shaffer v. Jenkins, 72 N.C. 275; Boner v. Adams, 65 N.C. 639, and the dissenting opinion of the present Chief Justice in White v. Auditor,126 N.C. 596.
But the plaintiff insists that this Court may declare an act of the Legislature unconstitutional, and that the statute in question is in conflict with Article V, section 3, of the Constitution, and hence should be disregarded. This question is hereinafter discussed, but to the suggestion there are two other answers which are conclusive against the plaintiff's demands. The first is this: Even if the act should be stricken out or declared to be ineffective, the plaintiff, upon the allegations in his complaint, would still be without remedy. It will be seen upon a casual reading that section 3, Article V, of the Constitution is not self-executing; in express terms it provides that laws shall be passed taxing property by a uniform rule; and unless such laws are passed property cannot be taxed. If the act were declared void, by what authority could the Court or the defendant enact a law commanding the shareholder to list his stocks for taxation? More than this, if the statute should be treated as of no effect, the parties would still be bound by another to the effect that the owner shall return for taxation only such investments, stocks, and bonds as are not taxed through the corporation itself. Laws 1921, ch. 38, sec. 40.
And the second answer is that the record does not present for decision the constitutionality of the statute as a concrete question. It is true that the prayer for relief does not necessarily determine the nature of the action, but the allegations in the complaint considered in connection with the plaintiff's demand for relief, present for decision an abstract question of law, merely a matter of academic interest. The plaintiff first prays the Court to "declare and adjudge any legislative enactment reducing and exempting property in North Carolina to be unlawful, unconstitutional, unjust, inequitable, and against public policy." This language evidently includes real and personal property held by the State and by counties, cities, towns, school districts, religious bodies, and educational and charitable institutions, besides such household and kitchen furniture, mechanical and agricultural implements, and other kinds of personal property as are expressly exempted from taxation; but we may reasonably assume that it is not the purpose of the proceeding to abolish the exemption which has been extended to such property. *Page 505 
It being unnecessary for this reason to consider the complaint in connection with the first prayer for relief, we may now advert to the second. The second prayer shows that the plaintiff's object is to obtain amandamus requiring the defendant to list "all property in stocks, common and preferred," in the names of the owners at its true value in money. Inmandamus proceedings the constitutionality of a statute may be raised in proper cases by the relator or by the respondent — by the respondent where he claims that the invalidity of such statute exempts him from the performance of a duty which it purports to impose; and by the relator where he claims that such statute, by reason of its invalidity, excuses the respondent from doing an act or performing a duty to the relator's hurt or injury. 18 R.C.L., 105. But on the face of the record neither of these conditions appears, or is in any way presented to the Court. The statute referred to is not affirmative, but negative in its character. It provides that the individual stockholder "shall not be required to pay any tax on said stock," and there is no statute requiring him to make such payment. If, for instance, instead of this negative enactment the Legislature had affirmatively required the Revenue Department to list for taxation all shares of stock in the names of the owners, leaving in effect the other existing laws with respect to the taxation of corporate property, or if the defendant had undertaken to list such shares in breach of the act, and a shareholder had sought to enjoin the listing of such stocks, a vital controversy would have arisen in which the rights of the parties could have been litigated. But not so in this proceeding; it presents no real or actual controversy by which litigated rights may be determined. Judicial tribunals are not moot courts. It is their duty, not to express opinions which can have no practical effect, but to decide questions of merit, to render judgments that may be enforced, to do practical work, and to put an end to litigation. Crawley v. Woodfin, 78 N.C. 6; Parker v. Bank,152 N.C. 253; Kistler v. R. R., 164 N.C. 366.
The plaintiff is equally ill-advised in the selection of his tribunal and in the choice of his remedial process. His forum is the Legislature, but if it were a judicial tribunal, mandamus could not avail him. While this writ, originally prerogative, is now substantially a proceeding to enforce legal rights, it is nevertheless limited by conditions that are not applicable to an ordinary suit at law, and is employed as an extraordinary remedy in cases where other remedies fail. It is generally invoked to enforce a ministerial act or duty, and in some instances to command the performance of an imperative public duty for which there is no specific remedy, and it is uniformly denied where, as in this case, it would be nugatory or unavailing. It is essential for the petition to set out the respondent's failure to perform a manifest duty imposed upon *Page 506 
him, and if he has committed no breach of duty, and has not left undone that which he should have done, the writ, if issued, would accomplish nothing.
It should be borne in mind that the petitioner does not sufficiently allege a breach of duty by the respondent. He alleges that it is the duty of the respondent to have listed on the tax books by the owners for the purpose of taxation investments in bonds, stocks, and joint-stock companies, but he further alleges that this duty is enjoined by Public Laws of 1921, ch. 38, sec. 3, and an examination of this section and others will show that the Department of Revenue is utterly devoid of power to say what property shall or shall not be taxed. The Board of Tax Commissioners was given general supervision of the system of taxation, and the administration of all assessments and tax laws, as well as of assessors and boards of equalization, to the end that all assessments of property should be made relatively just and uniform, and that all property should be assessed at its true value in money. It was authorized to receive complaints as to property liable to taxation that had been assessed fraudulently or improperly, or not assessed at all, and to make such orders as were necessary to correct the irregularity complained of, and when advisable, to reconvene the county boards of equalization and to direct them to raise or to lower any assessment in order to equalize as far as practicable the valuation of all classes of property. The Tax Commissioners were constituted, also, a Board of Equalization, with power to equalize the sundry valuations of real property in the several counties of the State. These, in brief, are the duties prescribed by statute, and from this legislation appear two conspicuous facts: (1) The Legislature refrained from the preposterous attempt to delegate to the Tax Commissioners authority to say what property should be taxed; and apart from this, and as incidental to the main question, it appears that (2) the powers conferred upon them involve the exercise of judicial discretion which the courts have no power to control. And these facts are equally applicable to the State Department of Revenue. In view of these things, and of established fundamental principles, it would be perfectly idle to say either that the courts may assume the office of legislation or control the exercise of judicial discretion in the performance of the duties required of a public officer. Public Laws 1921, chs. 38 and 40;Brodnax v. Groom, 64 N.C. 245; Evans v. Comrs., 89 N.C. 55; Battle v.Rocky Mount, 156 N.C. 329; Comrs. v. Board, 158 N.C. 191; Ward v. Comrs.,146 N.C. 534; Burton v. Furman, 115 N.C. 166; S. v. Justices, 24 N.C. 430;Lutterloh v. Comrs., 65 N.C. 403; Belmont v. Reilly, 71 N.C. 260;Edgerton v. Kirby, 156 N.C. 347; Key v. Board of Education, 170 N.C. 797;Dula v. Trustees, 177 N.C. 426; Board of Education v. Board of Comrs.,178 N.C. 305. *Page 507 
That the plaintiff cannot maintain his position is beyond cavil or peradventure; the proceeding must be dismissed; and the opinion could well be concluded with the announcement of this result. But, as indicated, the plaintiff insists that the so-called "exempting statute" should be declared unconstitutional; and while, as we have shown, the question is not presented on the record, and the courts, recognizing the exercise of the power to decide on the competency of a law as their ultimate and supreme function, will not ordinarily assume the task of determining grave constitutional questions unless necessarily presented, still the paramount importance of a question which assails the policy adopted by the Legislature for taxing corporate property, and continued with minor changes for well-nigh half a century, demands an expression of opinion by the Court.
The statute objected to simply provides that if the corporation pays a tax on its capital stock the shareholder shall not be required either to list or to pay a tax on his individual shares.
In his assault upon this statute the plaintiff says, in effect, that the Constitution requires the payment of a tax by the shareholder upon his individual stock, even when the corporation pays the tax on its capital stock. This is the plaintiff's fundamental and fatal error. In the Constitution of North Carolina there is no such provision. It is required that laws be passed taxing by a uniform rule all moneys, credits, investments in bonds, stocks, joint-stock companies, or otherwise. Constitution, Art. V, sec. 3. It is the investment that is to be taxed, not necessarily the shares or certificates of stock. What is meant by investment? It is the laying out of money in the purchase of property, or the amount of money invested, either by way of loan or in the purchase of stocks, securities, or any other kind of income-producing property. It is defined, also, as some species of property from which an income or profit is expected to be derived in the ordinary course of business. Bank v. Barrett (Cal.), 58 P. 914; People v. Ins. Co. (N. Y.), 8 Am. Dec., 243; Ins. Co. v. Phillips, 141 Mass. 535; Drake v. Crane,127 Mo., 85; People v. Feitner, 167 N.Y. 1. The ordinary conception of "capital stock" is the fund, property, or other means contributed or agreed to be contributed by shareholders as the financial basis for the prosecution of the business of the corporation. Dodge v. Motor Co., 3 A.L.R., 434. But this definition, as applied to the statutes regulating the taxation of the capital stock of a corporation, is altogether inadequate and misleading. Perhaps the greater part of the confusion in thought concerning the taxation of the stockholder's shares as well as of the capital stock has arisen from a mistaken notion of the property that is actually taxed under the name of "capital stock." What property does this term include? Much more than the money or other *Page 508 
property contributed by the shareholders as the financial basis of the business; it is not limited, as is frequently supposed, to the aggregate amount of the face value of the certificates of stock; but the "capital stock" of corporations which is actually taxed in accordance with the statute, as may be seen hereafter, embraces every element that can impart value to the stock, including every enhancement in value that accrues to the corporation from the success of its business. So, by virtue of the statute there is nothing of value possessed by a corporation that is allowed to escape taxation. Certainly there can be no doubt that the shareholder's "investment" is taxed as the Constitution requires. The truth is, the certificate of stock represents the shareholder's investment in the corporation as the landowner's deed represents his investment in the land. If the land is taxed, why tax the deed? If the capital stock is taxed, why tax the certificates which represent the capital stock? No doubt the Legislature possesses the power to repeal the statute and to tax both; no doubt it possesses the power to devise a system of taxation that would be more burdensome to all classes, but if the Constitution does not require it, why should such additional burden be imposed? It is not denied that shares of stock in a restricted sense are the individual property of the owner, and in such sense may be considered as separate from the capital stock. The holder may sell his certificate without the consent of the company, but in doing so he sells only his interest in the corporation. His interest as a shareholder may become adverse to that of the corporation, but by investing in the capital stock he parts with the individual control of his money. It is only in this limited sense that shares of stock are separate from the corporation. In a broader and more real sense the interest of the shareholder is inseparable from that of the corporation. In the larger sense there is but one property, for shares of stock have value only as the taxed property of the corporation has value. During his lifetime the owner can derive no income from his shares unless the business of the corporation earns a profit; and upon his death, when his personal property passes to his distributee, it is not the certificate that is subject to an inheritance tax, but under a special statute the value of the owner's interest in the corporation represented by the certificate, just as such tax is assessed, not upon the deed, but upon the value of the land which descends from the ancestor to the heir. It seems, therefore, to be unquestionable that if the corporation be required to pay a tax on the capital stock as it is valued under the statute and the shareholders a similar tax on all their shares double the amount of the money or property contributed by the shareholders is thereby taxed, and no play upon words can escape the logic of this conclusion. The Constitution neither forbids nor requires double taxation, but the Legislature has refrained from levying the *Page 509 
double tax. The Constitution requires that investments in stocks shall be taxed, but it does not forbid the exemption of shares from taxation when the capital stock itself is taxed. And as the controversy turns upon the validity or invalidity of the statutory exemption of shares of stock it is apparent that the question whether taxing the individual shares as well as the capital stock is called double taxation is not as affecting the merits of the appeal a matter of material concern.
We have examined the cases cited by the plaintiff, and have made a somewhat diligent search among the decisions of other states and of the Supreme Court of the United States and have failed to find a single authority among our own decisions or elsewhere that supports the plaintiff's argument as to the question under discussion. Several decisions were cited in which occur expressions to the effect that payment of a tax on the capital stock and on the holder's shares is not double taxation, but neither of them was decided on facts that presented the question of double taxation when the capital stock of the corporation was valued and taxed as it is in North Carolina. This fact should be kept in mind, for we are admonished by authority no less eminent than Chief Justice Marshall that every opinion, to be correctly understood, ought to be considered with a view to the case in which it was delivered. U.S. v. Burr, 4 Cranch, 470.
This Court has already expressed its opinion as to the constitutional validity of this exemption. Neither in Belo v. Comrs., 82 N.C. 415, nor in Worth v. R. R., 89 N.C. 305, nor in Comrs. v. Tobacco Co., 116 N.C. 441, was this "exempting statute" considered; but the opinion of the Court in the last of these cases recognizes the power of the Legislature to require a corporation to list for taxation shares of stock on behalf of the stockholder, and to deduct from the total value of such shares the value of the property which it has listed in this State. In the opinion of the Court the Chief Justice said: "Originally the tax upon the shares of stock was collected of the individual shareholders at their several places of residence. Buie v. Comrs., 79 N.C. 267. But under that method many shares failed to be listed for taxation. Besides the shares of nonresident owners, except those of national banks, escaped taxation in this State under the ruling in R. R. v. Comrs., 91 N.C. 454. To remedy this, the provision was passed, which is section 14 of chapter 296, Laws 1893, and which requires the list of shares to be given in by the proper officer of the corporation which shall pay the same in behalf of the shareholders. This does not affect the liability of the shares to tax as the property of the shareholders, but is simply for the convenience of the State in collecting the tax. The effect is merely to change the situs of the shares for taxation from the residence of the owner to the locality where the chief office of the corporation is situated, *Page 510 
as was held in Wiley v. Comrs., 111 N.C. 397. It simply extends to the collection of taxes due by shareholders in other corporations the mode of collection already in force as to shareholders in national banks. U.S. Rev. St., sec. 5219."
This decision is approved in Pullen v. Corporation Com., 152 N.C. 556, in which Manning, J., said: "It will be observed that in the section of the Machinery Act under consideration it is made the duty of the defendant commission to deduct from both the market and the actual value of the shares of stock, as ascertained by it, before fixing the taxable value of such shares, the aggregate of the real and personal property listed by the banking institution. The principle of deduction is further recognized in the cases of individuals and corporations, when they come to list their solvent credits, in that from their solvent credits they are authorized to deduct their obligations or debts due by them, and the balance is to be listed as their taxable solvent credits. This principle is recognized by the Supreme Court of Illinois as constitutional, in Loan Assn. v. Keith,153 Ill. 609. The Legislature has for many years recognized this as an equitable system of taxation; it has been incorporated for more than twenty-five years in our system of taxation, and this notwithstanding that it has been well settled by repeated decisions of this and other courts that shares of stock are, in the hands of the shareholder, separate and distinct property from the property of the corporation.
"The fairness and justness of the principle of deductions in the method of ascertaining the taxable value of the subjects of taxation, in order to avoid the essential harshness and inequity of double taxation, was, we think, distinctly sanctioned as long ago as 1882, in R. R. v. Comrs.,87 N.C. 414. That case was presented to this Court on appeal by both parties from the judgment of the Superior Court, and in delivering the unanimous opinion of the Court, Chief Justice Smith, as pertinent to the present matter, said: `The commissioners object further that the assessed value of the preferred stock should be reduced by the value of the real estate and franchise as taxed separately in the several counties traversed by the road. The ruling of the Court in directing the reduction is obviously made to avoid the imposition of a double tax, since the value of all property owned by a corporation, in whatever consisting, and including the franchise, is the true and fair measure of the value of all its stock, and hence the General Assembly permits stockholders, in valuing their shares, to `deduct their ratable proportion of tax paid by the corporation upon its property as such in this State. Sec. 8, par. 6.'"
In the later case of Brown v. Jackson, 179 N.C. 363, this statute (exempting shares from taxation when the capital stock is taxed) was *Page 511 
considered, and Brown, J., said: "In conclusion, we do not question the validity of the statute hereinbefore quoted, which has been the legislative tax policy of this State for so many years. Acting within its constitutional powers, it is for the Legislature to determine the subjects of taxation, and it is not ours to declare what it shall include and what it shall omit." Mr. Justice Allen dissented on another ground, but recognized the constitutionality of the statute, saying: "I concur fully in the proposition that it is for the Legislature to determine the subjects of taxation, and think, under the facts in this record, it has said the shares of the plaintiff shall not be taxed."
This Court and the Legislature have apparently agreed in their construction of Article V, section 3, of the Constitution, so far as it relates to this statute, and although we are not bound by it, the legislative interpretation is entitled to our respectful consideration. So this Court has declared. In Attorney-General v. Bank, 21 N.C. 216,Chief Justice Ruffin said: "Besides the reasons for our opinion drawn from the provisions of the act itself, the most forcible one arises out of the contemporaneous construction put on the act by the stockholders, fiscal agents of the State and the Legislature. . . . Their acts, contemporaneously and continued consistently through a period of eighteen years, are such a strong proof of the sense in which the act was understood by those who passed it as to make their construction almost as authoritative as if the words admitted of no other."
Examination of the legislative policy concerning the taxation of corporate property reveals the intent, uniform and continuous, not to tax both the capital stock and the shares of the holder. This was the policy of the State before the Constitution of 1868 was adopted, and it has since been continued, as will appear by reference to the various acts.
"The stock or interest held by individuals in all corporations, excepting banks, shall not be listed or assessed among the individual property of the stockholders, but shall be listed by the corporation, and the corporation shall pay the tax thereon." Public Laws 1860-61, ch. 31, sec. 5.
"The tax list shall contain stocks in any incorporated company or joint-stock association and their estimated value; but the stock shall not be taxed if the company pays a tax." Public Laws 1869, ch. 74, sec. 12 (6).
Practically the same legislation was reenacted at each session until 1887, when the Legislature passed the "exempting statute," which with unimportant changes has since been continued in effect.
To understand the trend and significance of this "exempting statute," when considered in connection with Article V, section 3, of the Constitution, it is necessary to bear in mind the existing method of taxing corporate stock. For such purpose the following synopsis will be *Page 512 
sufficient. The proper officer of a corporation having capital stock is required to make a report in writing to the State Tax Commission (now the State Department of Revenue), stating the total authorized capital stock, the total authorized number of shares, the number of shares of stock issued, and the par value of each share, the amount paid into the treasury on each share, the amount of capital stock paid in, the amount of capital stock on which a dividend has been declared, the date and the amount of the dividend, and the highest price as well as the average price at which the stock was sold during the year. Such officer, after being duly sworn or affirmed, must also estimate and appraise the capital stock of said company at its actual value in cash on the first day of May, after deducting therefrom the assessed value of all real and personal estate upon which the corporation pays tax and the value of the shares of stock legally held and owned by such company in other corporations incorporated in this State and paying tax on its capital stock in this State. Every such corporation may deduct from the total amount of its capital stock, surplus, and undivided profits the total amount of its actual investment in such bonds of the State, of the United States, of the Federal Farm Loan Bank, and of the Joint-stock Land Bank, as have been held as a continuing investment by such corporation for a period of not less than three months prior to the day on which such report is required to be made. If the State Department is not satisfied with the appraisement and valuation made and returned, it may make a valuation based upon the facts contained in the report, or upon any other information in its possession, and may settle an account on the valuation so made for taxes, penalties, and interest due the State thereon; and if the corporation is dissatisfied with the settlement thus made, it may appeal to the Superior Court in term, and thence to the Supreme Court. Public Laws 1921, ch. 38, sec. 43. In making such assessment, the Department of Revenue shall first ascertain the true cash value of the entire property owned by the corporation, taking the aggregate value of all the shares of capital stock in case the shares have a market value, or in case they have none, taking the actual value of the same or of the capital of the corporation, however it may be divided, in case no shares of stock have been issued. If the property is mortgaged, its true cash value shall be ascertained by adding to the market value of the aggregate shares of stock, or to the value of the capital stock, if there are no shares, the aggregate amount of the outstanding mortgage or mortgages. The result so obtained shall be treated as the true cash value of the property of the corporation. Section 57. If any of its property is locally assessed, the amount of the local assessment is to be deducted from the cash value finally ascertained, and as a part of the total amount of the taxes there must be estimated also the tax on the franchise of the company. Section 82. The Commissioner of Revenue *Page 513 
finds the actual market value of the capital stock, to the end that if the corporation has not made return to the list-taker of its real and personal property at a total value as great as the total value of its capital stock (or of the "investments" in its shares of stock), the deficiency may be certified to the register of deeds of the proper county, and the amount of such deficiency added to the listed value of its real and personal property under the name of "corporate excess."
It is argued that there is a distinction between common and preferred stock, and that the latter is a debt of the corporation, and should be treated as a bond. To this we do not agree, so far as the question of taxation is concerned. Both classes of stocks are "investments" in the capital stock of the corporation. The investor in the common stock elects to hazard his investment against the company's failure to earn dividends and against its liability to liquidation. Preferred stock is no less an investment, the investor therein assuming a similar hazard on condition that he be given a prior lien on the earnings and property of the company. As an equitable balance against the prior lien given the preferred stockholders the holders of common stock are usually entrusted with the management of the business. The holders of both kinds of stocks are creditors of the corporation in the sense that the corporation owes them a return on their investment, but neither occupies toward the corporation the relation of a bondholder. The distinction is this: The corporation is required by statute to make return to the Commissioner of Revenue of all its shares of stock, common and preferred alike, to be assessed and valued at the actual value of such shares, so that no investment in the capital stock of such corporation may escape taxation. The corporation also pays a franchise tax based upon its preferred as well as its common stock. The relation between a corporation and the holders of its bonds is the complete relation of debtor and creditor. Bonds issued by a corporation are not in any sense a part of its capital stock; they are not reported by it or assessed against it as a part of its capital stock; and, therefore, the holders of such bonds are required to list them for taxation.
When the existing system of taxing corporate property is considered, it is not difficult to perceive that care has been taken to insure the taxation of investments in the stocks of corporations by dealing primarily with the companies and not with the shareholders. This, in fact, is the system which generally prevails. The North Carolina Corporation Code is authority for the statement that a large majority of the states (enumerating forty-four) have adopted a policy similar to or identical with that pursued in our own legislation (p. 501). However that may be, the oft-repeated enactment of a statute which was intended to prevent double taxation has evidently met the approval of the State. We are *Page 514 
dealing with the statute and the Constitution as they are, and not as they would be if otherwise written. Changes in them must be wrought as provided by the law — by the people or by their representatives in the law-making department, or by both; but in any event the Legislature is responsible to the electorate and not to the courts.
In our opinion, the statute which provides that individual stockholders in any corporation or company paying a tax on its capital stock shall not be required to pay any tax on said stock, or list the same, is not in conflict with Article V, section 3, of the Constitution of North Carolina.
The plaintiff's action must be dismissed.
Action dismissed.
WALKER and HOKE, JJ., concurring.