S. P. DRY, ADMINISTRATOR OF JOHN T. DRY, DECEASED, v. THE BOARD OF DRAINAGE COMMISSIONERS OF CABARRUS COUNTY, DRAINAGE DISTRICT No. 6, AND H. M. JOHNSTON, H. G. BRADFORD AND R. C. BRADFORD, DRAINAGE COMMISSIONERS.

(Filed 30 October, 1940.)

1. **Pleadings § 5: Drainage Districts § 16—**

In an action to recover upon bonds of a drainage district, allegations of ownership and amount of the bonds, their maturity, demand for payment and prayer for *mandamus* to require the imposition and collection of assessments for their payment, will support judgment for the recovery of the money due upon the bonds, notwithstanding the absence of a specific prayer for judgment for the money, since the relief to which the plaintiff is entitled is determined by the facts alleged and not by the prayer for relief.

2. **Drainage Districts § 16: Mandamus § 2c—Municipality may waive condition precedent to mandamus that claim be reduced to final judgment and that resources for its satisfaction be shown.**

The provisions of C. S., 867, requiring that in an application for a writ of *mandamus* to enforce a money demand *ex contractu* against a municipal corporation the complaint should show that the claim or debt has been reduced to final judgment and should show what resources are available for the satisfaction of the judgment, and the actual value of all property sought to be subjected to additional taxation, and the necessity for the issuance of the writ, are provisions for the protection of the municipality which may be waived by it, and where the municipality does not make objection and agrees that the issues of fact and of law be submitted to the court, it waives the provisions of the statute. Whether action for the recovery of the money demand and a petition for *mandamus* to effectuate the judgment may be united in the same action, see C. S., 5356.

3. **Drainage Districts § 16—Questions relating to duty of commissioners in management of fiscal affairs and collection of drainage liens held immaterial in bondholder's action to recover on bonds of district.**

This action was instituted to recover on drainage bonds issued by defendant district. Defendants' answer alleged that certain landowners

in the district paid their assessments in cash prior to the issuance of bonds but that there was no record identifying them with reference to the record upon which assessments were apportioned, that the value of lands within the district had declined so that in many instances the assessments exceeded the value of the land, that the district had improved the roads of two counties and prayed that the counties be made parties to determine their respective liability to the district, that plaintiff was not entitled to priority over other holders of the bonds of the district, and that the amount of special assessments could not be determined until exhaustion of all remedies of the district, and requested instructions from the court as to the duties of defendant commissioners in levying the special assessment demanded and in respect to the enforcement and collection of liens against the various classifications of lands within the district. *Held:* It was not error for the court to confine its investigation to the issues existing solely between plaintiff and defendants even in the absence of a motion to strike the extraneous matter from the answer, and its judgment upon the bonds and order for the assessment and collection of a sufficient amount of money to pay plaintiff's judgment is upheld. Many of the administrative questions presented by the answer might be solved by court action in a proceeding properly constituted, but not in this action.

APPEAL by defendants from *Ervin, Special Judge,* at August Term, 1940, of CABARRUS. Affirmed.

The plaintiff administrator brought this action to recover judgment on certain bonds of the defendant Drainage District which had been sold to plaintiff's intestate and are now a part of his estate. Plaintiff also prayed that a writ of *mandamus* issue to compel the defendant commissioners to levy a tax for the payment of the judgment. The defendants answered, admitting the formal allegations of the complaint, and the issue of the bonds described in the complaint made payable to bearer; and denied knowledge of the present ownership of the bonds or their presentation for payment.

As a further defense, the defendants set up that certain owners of lands in the Drainage District had availed themselves of the option to pay cash upon the assessments made against them for the said bonds; that the total cost of improvements and maintenance for three years had been $30,026.20; that there was no record in the clerk's office identifying persons who paid cash assessments totaling $12,740.19, with reference to the record upon which assessments have been apportioned; that the depression beginning in 1929 forced down values of real estate and left the land in idleness, so that now the assessments in many instances are more than the land is worth; that the District had taken loss by sale of property, and that sale of lands had failed to bring the amount of the assessment, and that no one would bid when lands were subject to further assessment; that the Government had spent much money on the Drainage District but that drainage was still insufficient; that the lands were materially reduced in value by dyestuffs and sewage emptied in the

upper portion of the river by mills and towns on the watershed. Specific instances are given of low bids on lands within the district; and it is alleged that the drainage commissioners had ordered steps taken for foreclosure; that certain benefits were to be received by the roads of Mecklenburg County, and that repeated demands have been made that "benefits to the roads of the respective counties should be paid." It is alleged that there is no way at this time to tell what amount of special assessments should be made until foreclosures and other remedies are exhausted against all the lands. Following this, certain questions are asked: "In what amount a special assessment shall be made? Shall it include the lands in the district the owners of which have paid their assessments in cash prior to the issuing of the bonds? Shall it include the lands foreclosed and bought in by the Drainage Board, title to which is now in the Drainage Board? Shall it include the lands which have been foreclosed and bid in by and title made to persons other than the Board of Drainage Commissioners? Shall it include lands still owing assessments and not yet foreclosed? Shall it include lands that went into the bonds, the owners of which have paid out in full since the bonds were issued?

The answer further sets up that there are a large number of bonds, other than those involved in this action, outstanding against the Drainage District.

Upon these questions the further defense demands "that the Board of Drainage Commissioners be definitely instructed by declaratory judgment as to its further duties."

When the case was reached for a hearing, the parties waived trial by jury and submitted the issues of fact and of law to the court.

Finding the facts upon the admissions in the pleadings and the evidence before him, the trial court granted judgment upon the bonds held by plaintiff, allowed the petition for *mandamus,* and ordered the assessment and collection of "a sufficient amount of money to pay the judgment of the plaintiff, interest to date of payment, and of costs." Thereupon, defendants appealed.

*Hartsell & Hartsell for plaintiff, appellee.*
*J. Lee Crowell, Jr., for defendants, appellants.*

SEAWELL, J. In the chapter on Civil Procedure and sub-chapter relating to *mandamus,* the following occurs: "867. For money demand. In application for a writ of *mandamus* when the plaintiff seeks to enforce a money demand, the summons, pleadings and practice are the same as prescribed for civil actions: 'Provided that in all applications seeking a writ of *mandamus* to enforce a money demand on actions *ex contractu*

against any county, city, town or taxing district within the State, the applicant shall allege and show in the complaint that the claim or debt has been reduced to a final judgment establishing what part of said judgment, if any, remains unpaid, what resources, if any, are available for the satisfaction of the judgment, including the actual value of all property sought to be subjected to additional taxation and the necessity for the issuing of such writ."

Apparently the complaint in this case was drawn without reference to this statute, since it merely sets up the amount and ownership of the bonds, their maturity and demand, with other more formal allegations, and asks that *mandamus* may issue requiring the imposition and collection of assessments for their payment. Prayer for judgment for the money is not specifically made.

No doubt, judgment for recovery of the money due upon the bonds was correctly entered, since the plaintiff is entitled to any relief which the facts set up in the complaint warrant. *Knight v. Houghtalling,* 85 N. C., 17; *Gattis v. Kilgo,* 125 N. C., 133, 135, 34 S. E., 246; *Bolich v. Ins. Co.,* 206 N. C., 144, 172 S. E., 320; *McNeill v. Hodges,* 105 N. C., 52, 11 S. E., 265. However, a serious question arises as to whether or not the plaintiff is entitled to sue for judgment on the bonds and for a writ of *mandamus* in the same action.

Prior to the 1933 amendment, the writ of *mandamus* was available to compel the levy of taxes and assessments to pay the principal and interest on bonds and liabilities *ex contractu* which had not been reduced to judgment. *Casualty Co. v. Comrs. of Saluda,* 214 N. C., 235, 238, 199 S. E., 7. But, under chapter 349, Public Laws of 1933, amending C. S., 867, the petitioner for *mandamus* must allege and show that the claim has been reduced to judgment. Whether the purpose of the statute might not be satisfied by uniting a cause of action for the recovery of the money and a petition for *mandamus* to effectuate the judgment in the same action, see C. S., 5356.

It is true that the use of the writ of *mandamus* in matters of this kind has been much simplified: "Such proceedings are not proceedings in equity. *Walkley v. Muscatine,* 6 Wall. (U. S.), 481; *Thompson v. Allen County,* 115 U. S., 550. Under our own practice, *mandamus* is put to statutory uses, and both by custom and authority has been deprived of much of its common law character. The writ is no longer, as at common law, a high prerogative writ; *Belmont v. Reilly,* 71 N. C., 260; *Burton v. Furman,* 115 N. C., 166, 168, 20 S. E., 443; and the court has no discretion to refuse it when it is sought to enforce a clear legal right to which it is appropriate. *Hammond v. Charlotte,* 206 N. C., 604, 175 S. E., 148; *Hickory v. Catawba County,* 206 N. C., 165, 173 S. E., 56; *Braddy v. Winston-Salem,* 201 N. C., 301, 159 S. E., 310;

*Cody v. Barrett,* 200 N. C., 43, 156 S. E., 146; *Hayes v. Benton,* 193 N. C., 379, 137 S. E., 169; *Person v. Watts,* 184 N. C., 499, 115 S. E., 336. *Mandamus* is as much an instrument of enforcement at law as it is an aid in equity, and, as sought here, may be considered the equivalent of execution. *Bear v. Comrs.,* 124 N. C., 204, 210, 32 S. E., 558; *United States v. Oswego,* 28 Fed., 55; *Chicago v. Hasley,* 25 Ill., 595." *Casualty Co. v. Comrs. of Saluda, supra.*

Still our statute seems to be reminiscent of the equitable origin of the proceeding, having regard for matters that have been heretofore cognizable in equity when the writ was discretionary. It does more than require that judgment be taken before the remedy is available: It must be alleged and shown "what resources, if any, are available for the satisfaction of the judgment, including the actual value of all property sought to be subjected to additional taxation and the necessity of such writ." There is no averment of this sort in the complaint and no corresponding proof. But to what extent these considerations condition proper exercise of the writ, we do not find it necessary to determine at this time. The statute was enacted for the protection of municipalities and taxing bodies, and we do not question that this protection may be waived. Failure to assert it in apt time will have that effect. *Cameron v. McDonald,* 216 N. C., 712, 715, 6 S. E. (2d), 497.

We then have to consider the case upon the specific exceptions taken upon the trial.

The appeal is based upon supposed error in the trial court in failing to take certain action demanded by the defendants: (1) To instruct the Board of Drainage Commissioners as to its duties with respect to levying the special assessment; (2) to determine how many of the landowners had paid in cash the total amount of their assessments before the bonds were issued; (3) to make Cabarrus and Mecklenburg counties parties to the action, to determine the respective liabilities of each; (4) to make all bondholders parties to the action; (5) to declare the liabilities of various classification of lands in their present status with respect to the additional assessment to pay off the unpaid bonds and accrued interest; (6) to insert in the judgment a clause that the judgment should not be a prior lien to any other unpaid bonds issued by the Drainage District, but that it should share pro rata in the assessments of the district.

While the plaintiff did not make any motion to strike out the extraneous matter contained in defendants' further answer, this did not prevent the court from confining the investigation to the field of inquiry limited by the complaint and the relevant portions of the answers and the issues thus raised. The issues between the plaintiff and the defendants were clear-cut and none of the matters excluded by the court had a relevant bearing thereupon or could in any way delay or defeat the plaintiff in its action.

None of the parties suggested by the defendants were necessary to a determination of the immediate rights between the parties to this action with respect to the relief demanded, however necessary the final adjustment of the financial affairs of the district may be. *Casualty Co. v. Comrs. of Saluda, supra.*

It must be admitted that very serious questions are presented to commissioners who have the financial affairs of a district in charge, and perhaps questions still more serious confront its creditors. In the present proceeding, however, the court is unable to recognize the propriety of any proceeding or device which might result in something in the nature of a declaratory judgment, in which advice might be given upon the complicated questions presented to the court. Many of them, no doubt, in a proceeding properly constituted, might be solved by court action. In the present case, however, there seems to be no legal reason why the plaintiff is not entitled to his relief without reference to them. *Casualty Co. v. Comrs. of Saluda, supra.*

We find no error in the trial, and the judgment is

Affirmed.