CALDWELL COUNTY v. R. A. DOUGHTON ET AL.

(Filed 31 January, 1928.)

**1. Taxation—Levy and Assessment—Review, Correction, or Setting Aside Assessment.**

The right of a dissatisfied taxpayer on lands to have the value of his property reduced for the purposes of taxation in proceedings before the State Board of Assessments by original proceedings, under the statute of 1925, was superseded by the statute of 1927, requiring certain proceedings before the board of county commissioners to originally be had, and when the question involved is solely as to whether such value theretofore fixed and agreed upon be reduced, original proceedings before the State Board will be disregarded and considered as a nullity.

**2. Statutes—Construction—In Particular Classes of Statutes.**

An amendment to a statute by the Legislature may in proper instances be regarded as an interpretation of a former act and considered by the courts as persuasive authority.

APPEAL by plaintiff from *Schenck, J.,* at August Term, 1927, of CALD-WELL. Reversed.

The defendants are the State Board of Assessment, hereafter designated Board of Assessment, the individual members thereof, and A. L. Watts. They were notified that the plaintiff would apply to the Superior Court for a writ of *certiorari* to view an order of the defendant board in accordance with a petition or complaint containing in substance the following allegations: (1) On 25 October, 1919, the Watts Cotton Mill Company, hereafter designated Watts Company, listed its real property in Caldwell County at $250,000; and on the first Monday in April, 1923,

CALDWELL COUNTY v. DOUGHTON.

the board of commissioners, pursuant to the Public Laws 1923, ch. 12, sec. 124, determined by resolution that the taxable property of the county had been assessed at its true value in money, that a reassessment was unnecessary, and that real property in the county should be entered upon the tax books for the next quadrennial period at the value which had previously been assessed. (2) On 18 June, 1923, the Watts Company, having sold a part of its land, listed the remainder for taxation at $213,016; and on 3 April, 1926, it conveyed to A. L. Watts all its land in Caldwell County except about 30 acres, thereby reducing the quantity in the county to 595 acres, which on 2 July, 1926, was listed by Watts at $171,991. (3) Neither the Watts Company nor Watts in 1919, or 1923, or at any other time prior to 1927, made any complaint to the county board of equalization or other officers in regard to this valuation, but in April, 1927, Watts did request of the chairman of the board of commissioners a reduction, which was refused at a regular meeting of the board. (4) Watts thereafter filed with the Board of Assessment a petition for a reduction in valuation, and the board made an order that the property be assessed at $100,000, as of 1 May, 1926, for the purpose of taxation for the year 1926. (5) The defendant Watts is due as taxes for 1926 the sum of $2,710.12.

The summonses were issued 19 August, 1927, and were duly served with a copy of the complaint and the notice. At the hearing Watts paid the taxes admitted to be due upon the valuation fixed by the Board of Assessment and the record of the board was made a part of the record in the cause.

The defendant board and the defendant Watts filed separate demurrers for defect and misjoinder of parties defendant; for failure to state a cause of action in that it is sought to review the order of the Board of Assessment in a direct proceeding against it, whereas the remedy, if any, is by appeal or *certiorari;* and in that the only alleged cause of action is a want of jurisdiction on the part of the Board of Assessment to hear and determine the matters in controversy. The demurrers were sustained and the plaintiff excepted and appealed.

*Squires & Whisnant for plaintiff.*
*Frank Nash and Walter D. Siler, Assistant Attorneys-General for the Board of Assessors.*
*W. C. Newland, F. A. Linney and J. H. Burke for A. L. Watts.*

ADAMS, J. The plaintiff alleges, and by demurring the defendants admit, that on 25 October, 1919, the Watts Company listed its real property in Caldwell County at an accepted valuation of $250,000; that on the first Monday in April, 1923, the board of commissioners,

pursuant to the Public Laws of 1923, ch. 12, sec. 124, determined by resolution that taxable property in the county had been assessed at its true value in money; and that real property therein should be entered on the tax books for the next quadrennial period at the value previously assessed; also that on 18 June, 1923, the Watts Company, having sold a part of its land listed the remainder at an accepted valuation of $213,016. The mill was sold to A. L. Watts on 3 April, 1926, and on 2 July, 1926, the land, then reduced to 595 acres, was listed for taxation at $171,991, a sum approved by the county authorities as a proper basis for the assessment of taxes.

In 1923 the land owned by the Watts Company was given an assessed value for the next four years. Public Laws 1923, ch. 12, secs. 114, 120. The board of county commissioners constituted the board of equalization in each county (sec. 18) or the board of equalization and review (sec. 122); but it was provided in section 18 that the board should not increase or diminish the assessed value of any lands, except in the year in which the lands were valued for taxation, unless such valuation were affected by extraordinary circumstances, the facts in connection with which were to be found by the board. Whether the difference between $213,016, the assessed value of the land on 18 June, 1923, and $171,991, the assessed value on 2 July, 1926, was a diminished valuation or an apportionment of the assessed value among the Watts Company and the purchasers of parts of the land, we need not inquire; for the property in question was listed after the sales at a valuation which was acceptable to the plaintiff.

In addition to the sections heretofore cited from the act of 1923, the Machinery Act of 1925 contains a provision for specific complaints in reference to the valuation of land. The board of county commissioners is authorized to hear and determine specific complaints of overvaluation or undervaluation of any particular tract of real property after the general equalization order has been made—the aggrieved party to file with the clerk of the board sometime in May or June of the current year an application in the prescribed form. Public Laws 1925, ch. 102, sec. 109.

The act of 1927, continues all the foregoing sections and provides that the application for relief shall be heard not later than 15 July, and that any property owner may except to the order of the board of county commissioners and appeal therefrom to the Board of Assessment by filing written notice of such appeal and the grounds therefor with the board of commissioners within ten days after final action and by filing with the Board of Assessment notice of such appeal and a copy of the statement of the grounds therefor within ten days after filing such notice with the board of commissioners. Thereupon the Board of Assess-

ment must fix a time for the hearing and after observing the required formalities may reduce, increase, or confirm the valuation determined by the commissioners.

It is admitted that neither the Watts Company nor A. L. Watts observed any of these statutory requirements at any time. The only semblance of observing them was his conference with the chairman of the board of county commissioners in April, 1927, when the board was not in session; and after the board had made an order declining his application for relief he neither excepted nor appealed.

The first step in the present proceeding was the filing by A. L. Watts of a written application in the office of the Board of Assessment in Raleigh for a reduction in the valuation of the mill property. The application was filed on 25 May, 1927; but before this time the act of 1925, cited in his brief and apparently relied on by the appellee Watts (Public Laws 1925, ch. 102, sec. 5, subsec. 3), had been superseded by the act of 1927. Public Laws 1927, ch. 71, sec. 5, subsec. 3. The latter act went into effect 9 March, 1927. The section on which the appellees base their agreement (act 1925, *supra)* authorized the Board of Assessment: "To receive complaints as to property liable to taxation that has not been assessed or of property that has been fraudulently or improperly assessed through error or otherwise, and to investigate the same, and to take such proceedings and to make such orders as will correct the irregularity complained of, if found to exist. The said board shall constitute a State board of equalization of valuation and taxes. In case it shall be made to appear to the board that any tax list in any county in the State is grossly irregular, unlawfully or unequally assessed, it shall be the duty of the board to correct such irregularities, and to equalize the valuations of property, in a particular county, upon complaint to it of particular taxpayers, or upon its own initiation, under rules and regulations prescribed by it, not inconsistent with this act."

Upon the admitted facts it is manifest that the property was neither fraudulently nor improperly assessed in 1923, and that the first clause of the section is not controlling. The last clause affords relief against "any tax list which has been irregularly, unlawfully, or unequally assessed." The purpose contemplated is revision of the "tax list," whether upon complaint of individual taxpayers or upon the initiative of the board. Whether the section is applicable to the appellee's petition is a matter of grave doubt; but if it is, we are still of opinion that there was error in granting the relief sought. The appellee's petition is addressed to a reduction in value of the mill property as a whole; the plaintiff's complaint is based primarily upon the Board of Assessment's power to reduce the value of the real property owned by the Watts

Company or by Watts individually. Affixed to the complaint is a list of the property returned for taxation: 595 acres valued at $171,991; total value of all real and personal property on 1 May, 1926, $183,116. The order of the Board of Assessment reducing the total valuation to $100,000 necessarily involves reduction in the valuation of the real property—and this reduction, the appellant contends, was not made in compliance with law.

Moreover, in 1927, the General Assembly amended the section we have quoted by adding this proviso: *"Provided,* that no appeal shall be considered or fixed values be changed, unless notice of the same is filed within ninety days after the final values are fixed and determined by the board of commissioners of the county." Public Laws 1927, ch. 71, sec. 5, subsec. 3. This being the only provision in the section for an appeal, it may be regarded as a legislative interpretation that without the proviso the statute contemplated an appeal from the board of commissioners, as essential to the exercise of jurisdiction in matters of this kind by the Board of Assessment; and such legislative construction though not controlling is entitled to respectful consideration. *Sash Co. v. Parker,* 153 N. C., 130; *Kornegay v. Goldsboro,* 180 N. C., 441. This conclusion is fortified by section 110 of the act of 1927 (ch. 71), which in like manner provides for an appeal from the board of county commissioners.

The Watts Company did not contend that its property was overvalued in 1923, or at any other time; and A. L. Watts, who bought the property on 3 April, 1926, made no formal complaint to the board of county commissioners. His informal statement to the chairman was made, not in "May or June of the current year" (Laws 1925, ch. 102, sec. 109), but in the month of April, 1927; and on 12 August, 1927, the Board of Assessment ordered that the revaluation be assessed as of 1 May, 1926.

We understand it not to have been the intention of the General Assembly to confer upon the State Board of Assessment original jurisdiction to hear and determine at all times indiscriminate complaints by individual taxpayers of the overvaluation of their property, but as to controversies similar to this, which arise upon the admitted allegations of the complaint, to confer jurisdiction to review the final orders of the county board of equalization in the manner provided by law. In the case before us this course was not pursued, and as the proceeding before the State Board of Assessment was not authorized by statute it must be dismissed. The judgment of the Superior Court is

Reversed.