BELK'S DEPARTMENT STORE, INC., v. GUILFORD COUNTY; GEORGE
    L. STANSBURY, CHAIRMAN, J. W. BURKE, R. C. CAUSEY, JOE F.
    HOFFMAN AND FLAKE SHAW, CONSTITUTING THE BOARD OF COM-
    MISSIONERS OF GUILFORD COUNTY, NORTH CAROLINA, AND ALSO
    CONSTITUTING A BOARD OF EQUALIZATION AND REVIEW; AND
    A. C. HUDSON, TAX SUPERVISOR OF GUILFORD COUNTY, NORTH
    CAROLINA.

(Filed 8 January, 1943.)

**1. Constitutional Law §§ 4c, 17: Taxation § 25—**

The provision of the North Carolina Constitution, relating to trial by jury (Art. I, sec. 19), does not require court review of the valuation of land for taxation, or determination of such value by a jury in a *de novo* hearing, and will not support resort to *certiorari* for that purpose.

**2. Taxation § 25: Appeal and Error § 18b—**

*Certiorari* will not lie to bring up for review the valuation of land fixed by the State Board of Assessment, on appeal from the county commissioners acting as a board of equalization, where the proceeding was in accordance with the statute and no want of jurisdiction or abuse of power or discretion is charged, and only errors of judgment are involved.

**3. Appeal and Error § 18b—**

Where *certiorari* is used as a substitute for an appeal expressly provided in the law, which has been lost without fault of the petitioner, the

hearing in the court must necessarily be *de novo*, if the appeal provided is of that nature; but it is otherwise when the writ is used, as at common law, to bring up for review the action of inferior courts or tribunals upon the principle that the acts sought to be reviewed are judicial or *quasi-judicial*.

**4. Constitutional Law §§ 3b, 4c—**

Where the written Constitution does not otherwise direct, the Legislature may distribute powers and functions of government as it may deem proper for the best interests of the public and may make the action of administrative boards, set up for that purpose, final and conclusive.

STACY, C. J., dissenting.

APPEAL by defendants from *Olive, Special Judge,* at 31 August, 1942, Civil Term, of GUILFORD. Reversed.

The plaintiff, a corporation under the laws of this State, is the owner of a lot and building thereon at the southeast corner of the intersection of South Elm Street and East Market Street, in the city of Greensboro, Guilford County. The property was listed for taxation as of 1 January, 1941, and appraised or valued for the purpose of tax assessment in regular course by the authorities established by law for that purpose.

In the county of Guilford a Revaluation Board of Assessors had been established by statute applicable to that county, chapter 86, Public-Local Laws of 1941, which, in the order of procedure provided, first undertook the appraisal of the property and made separate findings as to the value of the lot and the value of the building thereupon, and finding the total value of the property therefrom. The value of the land was fixed at $271,190.00 and a "tax value" of $230,511.50 resulted by reason of a rule, uniformly applied, that for taxing purposes 85% of the real value should be observed. The record does not disclose the total valuation of land and building together.

The plaintiff, contending that the valuation was excessive, filed a complaint before the Guilford County Board of Equalization and Review, a board created under authority of the above cited statute, ch. 86, Public-Local Laws of 1941, requesting a reduction of the valuation set on the land alone, not complaining of the value placed on the building. This complaint was filed 16 December, 1941. The plaintiff was represented at the hearing, which resulted in a reduction of $6,825.00, which it appears was to correct an error as to the frontage of the lot on Elm Street. Contending that the valuation was still excessive, plaintiff appealed from this board to the Board of County Commissioners of Guilford County, sitting as a Board of Equalization and Review. Machinery Act of 1939, sec. 1105, *et seq.* (Michie's Code of 1939, sec. 7971 [160], *et seq.*). The appeal was heard on 16 April, 1942, and on 15 June, 1942, the board denied any further reduction of the valuation. Appeal was

then taken to the State Board of Assessment (*q.v.*, Michie's Code of 1939, secs. 7971 [106]-7971 [110], Machinery Act of 1939, secs. 200-204), where plaintiff was given a hearing on 29 July, 1942, as a result of which the valuation theretofore made was confirmed.

It is alleged in the petition that no oral testimony had been taken on the hearings; but that petitioner has filed statement of its contentions, "together with a tabulation of the figures involved," and that at the hearing before the State Board of Assessment, it introduced a "certificate of valuation" made by the Greensboro Real Estate Board, in which the value of petitioner's land was placed at $222,264.00. The petition recites various evidential matters in support of the merit of its contention that the value placed on the land is excessive.

As bearing on the right to the writ, plaintiff points out in the petition that there is no provision in the Machinery Act for an appeal from an adverse decision of the State Board of Assessment and avers that it is advised and believes that in such case access to the courts may be had by *certiorari*. The prayer of the petition is for a writ of *certiorari* to the State Board of Assessment to bring up the cause for a hearing in the Superior Court.

The defendants moved to dismiss the petition, assigning as grounds: (1) That plaintiff paid taxes voluntarily for the year 1941 on the property as valued; (2) that petitioner's only remedy by way of attack on the assessment was to pay the taxes and sue for recovery; (3) for that petitioner seeks a review of a finding of fact by the State Board of Assessment without alleging any error of law, want of evidence to sustain the finding of fact, or any allegation of want of jurisdiction in the State Board of Assessment, and without any allegation that the valuation fixed on petitioner's property by the State Board of Assessment was not equalized with the valuation of other property in the county; and (4) that the petition discloses no ground entitling the petitioner to a writ of *certiorari* or a jury trial to determine the facts in the matter.

Upon the hearing, Judge Olive, holding the August, 1942, Term of Guilford Superior Court, overruled the motion to dismiss the petition, and ordered that the writ be issued as prayed for by plaintiff. From this order defendants appealed, assigning error.

*York & Boyd for plaintiff, appellee.*
*D. Newton Farnell, Jr., H. C. Wilson, and B. L. Fentress for defendants, appellants.*

SEAWELL, J. The plaintiff contends that the action of the State Board of Assessment in fixing the value of its property for purposes of taxation was a *quasi*-judicial act and, therefore, subject to court review,

which may be had by *certiorari,* since the statute does not provide for an appeal to the court. Upon this theory, the propriety or necessity for review would be referred to the general power of the court to supervise inferior courts and tribunals with respect to judicial acts, and in this State the scope of such review would be controlled by the rules of the common law. But plaintiff is not content to rest its alleged right of review on this basis alone—probably because, where the practice obtains, review by *certiorari* on this principle is generally confined to errors of law—principally those affecting the jurisdiction of the board or the validity of the procedure—and does not include questions of fact or, to be specific, valuation of property for purposes of taxation. The plaintiff goes further than such a review would imply, and demands a *de novo* hearing in the Superior Court upon the merits, in which the value of the property may be fixed by a jury. Counsel for plaintiff in support of this demand call to our attention Article I, sec. 19, of the Constitution, relating to trial by jury, and cite certain decisions of this Court which they regard as having a favorable connotation: *Dougan v. Arnold,* 15 N. C., 99; *Petty v. Jones,* 23 N. C., 408; *Lunceford v. McPherson,* 48 N. C., 174; *Hartsfield v. Jones,* 49 N. C., 309; *Walls v. Strickland,* 174 N. C., 298.

It can readily be seen that where *certiorari* is used as a substitute for an appeal expressly provided in the law, which has been lost without the fault of the petitioner, the hearing in the court must necessarily be *de novo,* if the appeal provided is of that nature. It is otherwise when *certiorari* is used as at common law to bring up for review the action of inferior courts or tribunals upon the principle that the acts sought to be reviewed are judicial or *quasi*-judicial, or within the supervisory or "superintending" power of the court. 10 Am. Jur., Certiorari, sec. 4; *Hartsfield v. Jones,* 49 N. C., 309, 310.

*Rhyne v. Lipscombe,* 122 N. C., 650, 29 S. E., 57, and *Taylor v. Johnson,* 171 N. C., 84, 87 S. E., 981, rest upon the principle that the Legislature in creating an inferior court, without express right of appeal, cannot thus destroy the constitutional authority of the Superior Court or by act of the Legislature create courts of equal dignity and jurisdiction, and that in the absence of a provision for an appeal from such court, *certiorari* will lie as a substitute therefor. There is no doubt that the function of such a writ would be the same as the appeal usually provided in connection with such courts and would, in proper instances, bring up the case for a trial *de novo.* That principle has not been extended to a review by *certiorari* of the action of administrative bodies. When not otherwise provided by statute, the review is within the scope of common law rules.

1. *Certiorari will not lie to bring up for review the valuation of land fixed by the State Board of Assessment on appeal from the county commissioners acting as a board of equalization, where the proceeding was in accordance with the statute and no want of jurisdiction or abuse of power or discretion is charged, and only errors of judgment are involved.*

The statute restoring the writ of *certiorari* subsequent to the adoption of the Code of Civil Procedure, provides: "Writs of *certiorari, recordari* and *supersedeas* are authorized as heretofore in use." C. S., 630. Its use here closely follows that of the common law; and our Reports disclose no instance in which it has been used for the purposes suggested by the appellee, and no case, which, in our judgment, serves as authority for such use.

The scope of review under the writ as used at common law has been thus defined: "According to the weight of authority, where the scope of the writ has not been narrowed by statute, its office extends to the review of all questions of jurisdiction, power, and authority of the inferior tribunal to do the action complained of, and all questions of irregularity in the proceedings, that is, of the question whether the inferior tribunal has kept within the boundaries prescribed by the express terms of the statute law or well-settled principles of the common law." 10 Am. Jur., p. 524, sec. 3.

When *certiorari* is addressed to boards of assessment or boards of assessment and equalization, where that practice is permitted, it is generally held that the power of review, as in other instances of its use under the common law, does not extend to questions of valuation, but only to jurisdictional or procedural irregularities or errors of law. *State ex rel. American Exp. Co. v. State Board of Assessment and Equalization,* 3 S. D., 338, 53 N. W., 192; *People ex rel. Onderdonk v. Queens County,* 1 Hill (N. Y.), 195; *Tomlinson v. Board of Equalization,* 88 Tenn., 1, 12 S. W., 414; *State ex rel. Vance v. Dixie Portland Cement Co.,* 151 Tenn., 53, 267 S. W., 595; *Colonial Trust Co. v. Scheffey* (N. J.), 69 Atl., 455. In New York and New Jersey, and possibly some other states, *certiorari* has been made a special proceeding, giving to the reviewing court, under certain conditions, power to consider questions of valuation; Cooley on Taxation, section 1633; but even in those courts *certiorari* has been denied where the question raised as to valuation concerns only the exercise of a discretion on the part of the valuing board. *Colonial Trust Co. v. Scheffey, supra; People ex rel. Onderdonk v. Queens County, supra.*

In Cooley on Taxation, the outstanding authority on this subject, after reviewing numerous leading authorities on the subject, the author makes this observation: "The following conclusions are deduced by the authorities from these general principles:—that assessments cannot be re-

vised and set aside on this writ on the ground merely that they are excessive or unequal, except where the statute otherwise provides; or that the assessors have erred in any matter of judgment, or have been guilty of irregularities in the exercise of their authority, not being of a nature to deprive them of jurisdiction or to take from the party complaining any substantial right." And again, "The discretionary action of a county board in equalizing the assessments of the county, like the assessments themselves, is not subject to review on this process." And again, "It (*certiorari*) will not lie to review any merely discretionary action of any tribunal; nor is it within the proper scope of the writ to review the decisions of inferior tribunals on the merits." Cooley on Taxation, sec. 1633, pp. 3274, 3275-6.

Consistently with this principle, *certiorari* has been recognized in this State as a proper writ to bring up for review and correction action of the State Board of Assessment involving errors of law and mistakes or defects of procedure. *Power Co. v. Burke County*, 201 N. C., 318, 160 S. E., 173; *Caldwell County v. Doughton*, 195 N. C., 62, 141 S. E., 289. Neither of these cases is authority for the contention of the plaintiff that *certiorari* will lie to review the valuation of property or redetermine it in court where no error in law is charged.

We do not regard the references to these cases in *Hooker v. Pitt County*, 202 N. C., 4-6, 161 S. E., 542, as justifying the use of the writ where only the simple question of valuation is involved, without any charge or showing that in such valuation the board exceeded its powers or abused its discretion. Upon the theory presented by the plaintiff, it would have as much right to appeal by way of *certiorari* had the overvaluation amounted only to a few dollars rather than a few thousand.

Some attention might be given here to the apparent assumption upon which this petition for *certiorari* proceeds—that every act of an administrative board involving the exercise of sound judgment and discretion must be submitted to court review on the theory that the act is judicial. It is not expected that the law will be administered by robots. It is inevitable that in following the ordinary procedure imposed upon them by statute, boards of this kind must perform some acts not purely ministerial, make some decisions to which sound judgment and discretion must be applied—as, for instance, in the ascertainment of facts and conditions as a basis for further administrative action. The simple fact that the result is reached by similar processes of reason, common to all men, does not expropriate the exercise of these faculties to the judiciary. The action could only be judicial in any proper sense if it went to the determination of some right the protection of which, under our system of jurisprudence, is the peculiar office of the courts. No such right was involved in the challenged action; but, however labeled, we do not find

in it that necessity of court review which must exist as a justification for the writ. *Person v. Watts,* 184 N. C., 499, 506, 115 S. E., 336.

2. *The provision of the Constitution relating to trial by jury does not require court review of the valuation of land for taxation or determination of such value by a jury in a de novo hearing, and will not support resort to certiorari for that purpose.*

Article I, sec. 19, of the Constitution provides: "In all controversies at law respecting property, the ancient mode of trial by jury is one of the best securities of the rights of the people, and ought to remain sacred and inviolable."

Similar provisions are found in the constitutions of most of the American states. A summary of these expressions may be found in Page & Jones on Taxation, sec. 201.

Under this clause of the Constitution, trial by jury is only guaranteed where the prerogative existed at common law or by statute at the time the Constitution was adopted. *Groves v. Ware,* 182 N. C., 553, 109 S. E., 568; *R. R. v. Parker,* 105 N. C., 246, 11 S. E., 328.

In Page & Jones on Taxation, after the summary above noted, we find, sec. 202: "These provisions are held to be intended to secure and protect the right of trial by jury in cases where such right existed at common law. They are not intended, unless such affirmative intention is expressly stated, to extend the right of trial by jury to cases in which no such right existed at common law, as in cases of taxation." Cooley on Taxation, sec. 1220.

A difference between the owner and the State Board of Assessment with regard to the proper value to be placed upon the land for the purpose of taxation is not a controversy at law respecting property within the meaning of the constitutional provision. The purpose of the valuation is merely to produce a yardstick by which the amount of the tax may be measured and equalized with other subjects of taxation within the same class. Of itself it does not affect any right in the property or in its use.

In *Cowles v. Brittain,* 9 N. C., 204, *Chief Justice Taylor,* speaking to this point, said:

"There is a tacit condition annexed to the ownership of property that it shall contribute to the public revenue in such mode and proportion as the legislative will shall direct; and if the officers entrusted with the execution of the laws transcend their powers to the injury of an individual the common law entitled him to redress. But to pursue every delinquent liable to pay taxes through the forms of process and a jury trial would materially impede, if not wholly obstruct, the collection of the revenue; and it is not believed that such a mode was contemplated by the

Constitution." *Unemployment Compensation Commission v. Willis,* 219 N. C., 709, 713, 15 S. E. (2d), 4.

3. *Valuation under the current Machinery Act, where no error in law or abuse of discretion is alleged, is final and conclusive.*

The distribution of the power of government in any state is a political privilege. Where the written Constitution does not otherwise direct, the Legislature may distribute these powers and functions as it may deem proper for the best interests of the public, and where notice and hearing is provided may make the action of administrative boards set up for that purpose final and conclusive, without violating due process of law. This is true with regard to the assessment of taxes. Cooley on Taxation, sec. 1118; *Wade v. Commissioners, infra.*

The section of the Machinery Act relating to the final disposition of the proceeding for valuation—Michie's Code of 1939, sec. 7971 (162)— and providing that the valuation "shall be entered upon the fixed and permanent records and shall constitute the valuation for taxation," in our opinion, contemplates that such valuation shall be final and conclusive. *Wade v. Commissioners,* 74 N. C., 81. It follows that the courts, acting only under such supervisory powers as they may have under the Constitution, have no power to interfere except where the jurisdiction is invoked for the review of errors in law.

This does not mean, of course, that under the guise of tax assessment a property owner may be made the victim of fraud or oppression, or subjected to a confiscation of his property, or otherwise injured by any illegal act on the part of the officials or boards charged with the administration of the law. This would make the valuation in point of law no valuation at all, and for such injuries the law is replete with remedy. It does mean that where the taxing laws and procedure are not themselves in contravention of the Constitution, and when boards and officers authorized to administer them act within their jurisdiction, in accordance with the procedure laid down, and without abuse of discretion, there is neither the necessity nor the legal ground of court review.

But while appeal was not provided or expected under the former law, *Wade v. Commissioners, supra,* the plaintiff here has enjoyed the full right of appeal to three successive boards beyond the original board by which the property was valued, all of which were empowered to hear, and did hear, the matter upon the merits, and now wishes to be further heard before a jury as in a civil action.

In *Tomlinson v. Board of Equalization, supra,* referring to the question of valuation, the Court said: "Every interest of the state alike demands that such questions shall be settled cheaply and speedily. Where an act creating a special tribunal, even exercising judicial functions, gives it power and authority to settle particular grievances, such as this, and either expressly or by plain implication declares that the

judgment of such special tribunal shall be final, and it confines itself within its jurisdiction and does not 'act illegally,' the writ of *certiorari* will not lie to review its action upon the merits."

Inasmuch as it appears that some five thousand complaints were disposed of by the Guilford County boards alone, the following quotation from *Colonial Trust Co. v. Scheffey* (N. J.), 69 Atl., 455, in denying a petition for *certiorari,* meets our approval: "The only substantial question sought to be raised before this court is one of fact or rather of opinion, *viz.,* whether the assessment is too high. This question has already been disposed of adversely to the prosecutor by the county board of taxation and by the state board of equalization of taxes. The object of the creation and maintenance of these boards was, in part, to provide tribunals having peculiar opportunity and machinery for the investigation of questions of valuation, and, in part, to relieve the regular courts of this administrative function when disconnected with any violated principle of law.—Each of these objects will be frustrated if this court is to take on these cases of disputed valuation just as if no special tribunals for this purpose had been provided."

4. We have tried to avoid the citation of decisions turning solely upon the application of local statute law, but we consider the cases cited as expressing the law in this jurisdiction as applied to the facts of this case. We do not intend to lay down any comprehensive rule regarding the use of the writ; that is a broader subject, to be dealt with when occasion arises. Limiting our opinion to the point involved in the appeal and in the petition for *certiorari*—the question of valuation—it is sufficient to say that in no aspect of the petition is the plaintiff entitled to the writ as an instrument of review or to secure a *de novo* trial upon the merits.

It would be a waste of time to speculate upon what the plaintiff's remedy might be for grievances of which it does not complain.

The order of the court below directing the writ to issue is reversed. Judgment will be entered in the court below dismissing the petition.

Reversed.

STACY, C. J., dissenting: The appeal should be dismissed or else the ruling on the motion should be affirmed.

A landowner feeling aggrieved at the excessive valuation of his property for purposes of *ad valorem* assessment and taxation, after exhausting the administrative machinery of the State to little or no avail, applies to the Superior Court for relief. He alleges, without any undue characterization, that the method of assessment adopted by the local authorities was erroneous and unjust in result; that it caused the valuation of his property to be excessive, wide of the mark, at variance with the provisions of the Machinery Act and discriminatory, and that "the State

Board of Assessment, in its opinion denying relief to the petitioner, failed to take into account any of the petitioner's evidence, save the purchase price of the land, and this is rejected as not being controlling." (Par. 14.)

The merits of the case are not now before us. The only question sought to be presented is whether the petition should be entertained. The majority says "No." The judge of the Superior Court thought otherwise, and I agree with him.

## I. PROCEDURAL CONSIDERATIONS.

In the first place, the appeal is premature and should be dismissed *ex mero motu. Thomas v. Carteret County,* 180 N. C., 109, 104 S. E., 75. No appeal lies from a refusal to dismiss an action or proceeding. *Goldsboro v. Holmes,* 183 N. C., 203, 111 S. E., 1; *Farr v. Lumber Co.,* 182 N. C., 725, 109 S. E., 383; *Bradshaw v. Bank,* 172 N. C., 632, 90 S. E., 789; *Goode v. Rogers,* 126 N. C., 62, 35 S. E., 185. While an appeal lies from a ruling on a demurrer which goes to the whole cause of action, the practice is otherwise on denial of motion to dismiss, even where the basis for the motion is alleged deficiency of allegation to state a cause for relief. *Shelby v. R. R.,* 147 N. C., 537, 61 S. E., 377; *Mullen v. Canal Co.,* 112 N. C., 109, 16 S. E., 901. The reason no appeal lies from a refusal to dismiss is that it does not come within the purview of the statute, C. S., 638, permitting appeals. *Johnson v. Ins. Co.,* 215 N. C., 120, 1 S. E. (2d), 381; *Cement Co. v. Phillips,* 182 N. C., 437, 109 S. E., 257; *Leak v. Covington,* 95 N. C., 193. Perhaps a hundred cases could be cited in support of this position. *Chambers v. R. R.,* 172 N. C., 555, 90 S. E., 590. Indeed, speaking to the point in *Joyner v. Roberts,* 112 N. C., 111, 16 S. E., 917, it was said: "There are some questions which, by reiterated and uniform adjudications in regard to them, should be deemed settled. This is one of them." The reason for adhering to this procedure is, that the rights of the parties are different on formal demurrer from what they are on motion to dismiss. C. S., 515; *Shelby v. R. R., supra.*

The rule is in the interest of fairness to both sides. If the trial should result in favor of the respondents, they will not desire to appeal; if it is against them, their exception in the record for refusal to dismiss is not waived, and they will have the benefit of it on appeal from the final judgment. The disadvantage, if any, is not with the appellants, but with the appellee, since if he wrongfully insist on the refusal of such motion, instead of asking for an opportunity to make good his position, he may find that his victory is barren, and that he has the costs to pay for his bootless clamor. *Joyner v. Roberts, supra; Mullen v. Canal Co., supra.*

The uniform decisions are to the effect that a refusal to dismiss an action or proceeding before the final hearing does not "affect a substantial right" within the meaning of C. S., 638, and that an appeal therefrom will be dismissed. *Wilson v. Lineberger,* 82 N. C., 412; *Mitchell v. Kilburn,* 74 N. C., 483.

It is true, on petition for *certiorari* the applicant must show merit, but we are here dealing with an appeal from an order of the Superior Court denying a motion to dismiss. The two are not the same. The one is addressed to the chancellor with authority to entertain amendments if desired; the other is not appealable.

The respondents are seeking to cut short the matter by appealing from a refusal to dismiss and presenting the case as upon demurrer without its incidents. The majority approves; I disagree.

The argument at the bar centered around the appropriateness of the writ rather than the sufficiency of the petition. The opinion of the majority seems to have taken its cue from the argument. More of this anon.

## II. APPLICATION OF MACHINERY ACT.

Secondly, it is provided by Art. V, sec. 500, of the Machinery Act. ch. 310, Public Laws 1939, that the assessment of property for purposes of taxation shall be "at its true value in money," and *ad valorem* taxes are to be levied "uniformly on valuations so determined." It is further declared to be the intent and purpose of the Act to have all property and subjects of taxation assessed at their true and actual value in money, "in such manner as such property and subjects are usually sold," not by forced sale, but for what the property and subjects "can be transmuted into cash when sold in such manner as such property and subjects are usually sold."

The petition alleges that this provision of the Machinery Act has been ignored or violated in the assessment of petitioner's property. Beyond all peradventure it would seem that such an allegation ought to suffice to sustain an application for *certiorari.* Even where the findings of fact made by an administrative body are conclusive on appeal, the courts are disposed to set them aside, if, in making them, the fact-finding body has disregarded or misconceived the law. *McGill v. Lumberton,* 215 N. C., 752, 3 S. E. (2d), 324.

It seems quite clear that an allegation such as the petitioner makes here in respect of the misapplication of the Machinery Act belongs to the courts for final adjudication. This allegation alone should save the petition from dismissal. In addition, however, it is alleged that the State Board of Assessment "failed to take into account any of petition-

er's evidence save the purchase price of the land." What more is needed to excite the interest of a court of equity?

### III. PERTINENT ORGANIC PROVISIONS.

Thirdly, there is something in the Constitution on the subject-matter of the petition:

1. "The power of taxation shall be exercised in a just and equitable manner. . . . Taxes on property shall be uniform as to each class of property taxed." Art. V, sec. 3.

2. "No person ought to be . . . in any manner deprived of his . . . property, but by the law of the land." Art. I, sec. 17.

In numerous decisions, it has been said that the pervading principles to be observed in matters of taxation are equality of treatment and fair play. *Rockingham County v. Elon College,* 219 N. C., 342, 13 S. E. (2d), 618. It is the will of the people of this State, as expressed in the organic law, that justice shall prevail in tax matters, with "Equal rights to all and special privileges to none." Of course, in devising a scheme of taxation, "some play must be allowed for the joints of the machine," and many practical inequalities may exist, still they are not to result from obvious discrimination. The goal must be kept in sight. The thesis of the Constitution is, that all similarly situated are entitled to like treatment from the government they support. *Leonard v. Maxwell,* 216 N. C., 89, 3 S. E. (2d), 316. A discrimination in assessment is as much a violation of the rule of uniformity as a discrimination in the rate of levy. 2 Cooley's Const. Lim. (8 Ed.), 1066, *et seq.* In either case, the result is unequal taxation. To say that arbitrariness must be alleged in the one case and not in the other to give the courts jurisdiction is to make a distinction not heretofore observed in the decisions. Even so, a liberal interpretation of the present petition, which the pleader is entitled to have made, C. S., 535, would seem to suffice as against a motion to dismiss. It is going rather far to say that equity cares nothing for the allegations of this petition. It invokes the judicial process to make sure that fairness dominates the administration of the law.

The procedure here followed has been suggested in a number of cases; first, in *Caldwell County v. Doughton,* 195 N. C., 62, 141 S. E., 289, then in *Power Co. v. Burke County,* 201 N. C., 318, 160 S. E., 173, and, lastly, in *Hooker v. Pitt County,* 202 N. C., 4, 161 S. E., 542. Presumably, these suggestions are now to be regarded as apocryphal. At any rate, the present petitioner, in following them, has only had his toils for his pains.

Heretofore, the question of form has not been regarded as capitally important, as the above cases will disclose. Equity concerns itself with the substance. It is not bound by form. Moreover, if the thesis of the

majority be correct, there is no valid appeal in this Court. But instead of engaging in over-refined distinctions, the point should be stressed that we are here dealing with a matter which affects every property owner in the State.

A discriminatory assessment is just as unlawful as a discriminatory levy, and equally as hurtful. They both fall in the same category; and it is not after the manner of the courts of equity to close their doors on allegations of illegality involving either. *Anderson v. Asheville,* 194 N. C., 117, 138 S. E., 715; *Banks v. Raleigh,* 220 N. C., 35, 16 S. E. (2d), 413. It can make no difference whether the inequality inheres in the law or results from its administration, the effect is the same so far as the citizen is concerned. A charge of discrimination, whether in the assessment or in the rate of tax, presents a question of law as well as fact, sufficient to support an application for *certiorari.* A direct attack upon an administrative determination made in an appellate proceeding on *certiorari,* "unlike that on a writ of error at law, extends to the findings of fact as well as to the ruling on questions of law." *Panama Mail S. S. Co. v. Vargas,* 281 U. S., 670.

A mode of assessment which disregards the established method and results in discrimination falls short of the constitutional requirement of "due process" or that no person shall be deprived of his property "but by the law of the land." What becomes of this guarantee if the courts will not entertain an allegation of illegality or discrimination in the administration of the law? The Constitution forbids discrimination, either in the law itself or in its administration, and, hence, a discriminatory assessment, even under the statutory formula, runs counter to the law of the land. *Brinkerhoff-Faris Co. v. Hill,* 281 U. S., 673. This position has heretofore been taken for granted. The suggestions in the cited cases appear to have been made as a matter of course. Here, however, we have the question debated and decided against the petitioner, not upon the merits of the case, but as a matter of procedure. An administrative discrimination is just as unlawful as a legislative one. In the *Hill case,* just cited, the Supreme Court of the United States dealt with an excessive and discriminatory assessment on *certiorari,* and reversed a judgment of the Supreme Court of Missouri, because it "denied to the plaintiff due process of law." The petitioner ought not to be required to raise a Federal question in order to get into the State courts. The allegation in paragraph 14 alone is sufficient to invoke the aid of equity. It needs no embellishment with descriptive adjectives or conclusional characterizations. The failure to accord the protestant an adequate hearing was the basis of the reversal in the *Hill case, supra.*

An *ad valorem* tax on a discriminatory assessment, not only offends against the constitutional requirement of uniformity, Art. V, sec. 3, but

also against the inhibition of unlawful deprivation. Art. I, sec. 17. Such is the gist of the petition in the instant case. I am not willing to say that the judiciary is exhausted or that equity is impotent to entertain the petition. Nor yet that the petition is feckless. "Procedural instruments are means for achieving the rational ends of law." *Adams v. U. S. ex rel. McCann,* 317 U. S., ...... (decided 21 December, 1942). The judicial power of the State resides in the courts. Const., Art. IV, sec. 2. If 'the General Assembly is not permitted to discriminate in taxing property of the same class, it follows that it may not provide for the freezing of a discriminatory assessment in the administration of the law. The petition ought to be heard. It alleges an invasion of the right of equality of treatment. *Greene v. L. & I. R. R. Co.,* 244 U. S., 499.

The argument *ab inconvenienti* would seem to answer itself when it is recalled that the establishment of justice is the end of all government. To abandon its pursuit in the face of a charge of discrimination is to admit defeat. It is not in caste for equity to be so easily daunted. Its arms are neither short nor palsied. It is given to exalting substance over form and lending an attentive ear to allegations of maladministration. Such is its mission. The procedure in the Superior Court will depend upon the issues raised by the pleadings. These have not yet been determined in the instant case. Equity molds its decrees to meet the exigencies of the particular case. It is fully capable of directing that to be done which of right ought to be done. *McNinch v. Trust Co.,* 183 N. C., 33, 110 S. E., 663, *Suum Cuique.*

There is no difference in principle between an unlawful exemption and an excessive assessment. The one results in a discrimination in favor of the landowner; the other in a discrimination against him. We hear the one (*Odd Fellows v. Swain,* 217 N. C., 632, 9 S. E. [2d], 365) and decline to hear the other. We told the plaintiff in *Hooker v. Pitt County, supra,* that his remedy was by application for a *certiorari.* The present petitioner applies for a *certiorari* and we tell him that his application will not lie.

No case is cited, and none has been found, where equity has turned its back on allegations such as the petitioner makes here. My vote is to dismiss the appeal; failing in this, I vote for an affirmance.