D. M. WARREN, CHAIRMAN; A. C. BOYCE, E. N. ELLIOTT, RALEIGH PEELE AND J. A. WEBB, CONSTITUTING THE BOARD OF COUNTY COMMISSIONERS AND BOARD OF EQUALIZATION AND REVIEW OF CHOWAN COUNTY, AND P. S. McMULLAN, TAX SUPERVISOR OF CHOWAN COUNTY, v. A. J. MAXWELL, CHAIRMAN; STANLEY WIN-BORNE, CHARLES M. JOHNSON, ROBERT G. DEYTON AND HARRY McMULLAN, CONSTITUTING THE NORTH CAROLINA STATE BOARD OF ASSESSMENT, AND MORRIS S. HAWKINS AND L. H. WINDHOLZ, RECEIVERS OF THE NORFOLK SOUTHERN RAILROAD COMPANY.

(Filed 24 November, 1943.)

**1. Appeal and Error §§ 5, 40f—**

Where plaintiffs' cause was heard, in the court below, independently on the merits, and action on demurrers was reserved without prejudice to the defendants, a demurrer *ore tenus,* renewed in this Court, brings both questions up for decision.

**2. Mandamus § 2a—**

Subject to the right to review in this Court as it may exist under proper procedure, the final action of an administrative board on a matter within its jurisdiction will be held to be conclusive, and will be given effect in a subsequent proceeding involving the same matter.

**3. Mandamus §§ 2a, 2b: Appeal and Error § 18—**

*Mandamus* is not a proper instrument to review or reverse an administrative board which has taken final action on a matter within its jurisdiction. If there has been error in law, prejudicial to the parties, or the board has exceeded its authority, or has mistaken its power, or has abused its discretion—where the statute provides no appeal—the proper method of review is by *certiorari.*

**4. Mandamus §§ 2b, 2c: Taxation § 25—**

*Mandamus* is a proper remedy to compel the North Carolina State Board of Assessment to perform a public duty of a ministerial nature imposed by statute—but not to control them in the exercise of any discretion. The assuming of jurisdiction for assessments over the railroad lines

of common carriers and reporting to the several counties their quotas of valuation thereof may be regarded as ministerial duties.

**5. Mandamus § 1—**

While *mandamus* is no longer regarded as a high prerogative writ, a peremptory *mandamus* is a writ of enforcement—in the nature of an execution of the judgment of the court—and will not be issued unless petitioner has shown a clear right thereto, the ministerial duty, as well as the neglect or refusal to perform it, must appear.

**6. Mandamus § 2c: Taxation § 25—**

Where a railroad, under an order of the Interstate Commerce Commission, abandons its operations as a common carrier on a portion of its road, cancels its tariffs over same and thereafter does not operate over such portion of its line, except to haul away the scrap as the roadbed is dismantled and salvaged, it ceases to be vested with a character which would bring it within the jurisdiction of the State Board of Assessment for appraisal and taxation. C. S., 7971 (193), *et seq.*

APPEAL by plaintiffs from *Johnson, Special Judge,* at March Civil Term, 1943, of WAKE.

In this proceeding the plaintiffs sought a peremptory *mandamus* to have the defendant receivers to cause to be listed with the State Board of Assessment, for the year 1941, as a part of the track, roadbed and right of way of the Norfolk Southern Railroad Co., that part of its road running from Edenton, in Chowan County, to Norfolk, Virginia, which lies within the State, and to compel the said Board of Assessment to include the same in determining the pro rata part of the total valuation of the railroad in North Carolina to be apportioned to Chowan County for that year, and to certify such apportionment to the Board of Commissioners of the county.

The complaint, omitting formal parts and the prayer for relief, is as follows:

"1. Plaintiffs, other than P. S. McMullan, constitute the County Commissioners and Board of Equalization and Review of Chowan County, N. C., and plaintiff, P. S. McMullan, is Tax Supervisor of said County. The defendants, A. J. Maxwell, Chairman; Stanley Winborne, Charles M. Johnson, Robert G. Deyton and Harry McMullan, constitute the North Carolina State Board of Assessment and the defendants, Morris S. Hawkins and L. H. Windholz, are duly qualified and acting Receivers of the Norfolk Southern Railroad Company, having been appointed as such by the United States District Court having jurisdiction. The said Norfolk Southern Railroad Company is a corporation incorporated under the laws of the State of Virginia and operating a railroad as a common carrier in the States of Virginia and North Carolina and in the County of Chowan.

"2. Prior to August 2, 1940, the Norfolk Southern Railroad Company operated a railroad as a common carrier over a track, right of way and roadbed extending from Edenton in Chowan County, N. C., northwardly to the northern boundary of the County and on to Suffolk, Va. On said date the Interstate Commerce Commission issued its order effective September 2, 1940, authorizing, but not requiring, the railroad to abandon its operations as a common carrier on said line, and on or about September 21, 1940, the said railroad canceled its tariffs over said line and thereafter did not operate over said line except as hereinafter alleged.

"3. Prior to December 31, 1940, the said railroad contracted to sell and deliver the rails and fastenings on said line as scrap iron and prior to January 1, 1941, began tearing up the rails and fastenings on said line beginning at the Suffolk end and transporting them over the said line in freight cars to Edenton for delivery to the purchaser but on and for some time after January 1, 1941, had not reached the Chowan County line in tearing up the rails and fastenings and that part of the line located in Chowan County including its right of way, rails and roadbed were intact and in substantially the same physical condition it had been in when it was used for the regular operation of trains as a common carrier and was capable of use for operations as a common carrier and was being regularly used for the purpose aforesaid.

"4. The railroad failed to list the right of way, track and roadbed from Edenton to the northern Chowan County line with the State Board of Assessment for taxation for the year 1941 as a part of the railroad line but attempted to list it with the Chowan County authorities as scrap iron. The County authorities refused to accept such listing and filed a petition with the State Board of Assessment requesting that the said Board require the railroad to list the said right of way and roadbed as a part of its line to be included in determining the pro rata part of the total valuation of the railroad in North Carolina to be apportioned to Chowan County.

"5. After a hearing before the State Board of Assessment on August 20, 1941, at which the plaintiffs and the railroad were represented by counsel and in which the facts alleged were admitted to be true by the railroad, the State Board of Assessment entered the following order:

" 'ORDER, that the abandoned track involved in the appeal of the Norfolk Southern Railroad Company *vs.* Chowan County Commissioners be listed for the year 1941 with the local taxing units as "scrap." ' 

"Plaintiffs have refused to accept such listing and contend that the track, roadbed and right of way in controversy should be listed with the State Board of Assessment as part of the railroad line in North Carolina to be included in determining the pro rata part of the total valuation of the railroad in North Carolina to be apportioned to Chowan County."

Upon a demurrer for misjoinder of parties, it appearing that the receivers had conveyed the railroad property to the Norfolk and Southern Railroad Company, which company was now in operation of the lines of the Norfolk Southern Railroad formerly operated by the receivers, the complaint was amended and the Norfolk and Southern Railroad Company was brought in as party defendant.

It appears from the record that the plaintiff sought the same relief by petition to the State Board of Assessment prior to the institution of this action, had been heard upon the merits, and the State Board of Assessment had denied the petition on the ground that the owners and operating company had obtained permission of the Interstate Commerce Commission to abandon its operations as a common carrier on this line, and the company had thereupon canceled its tariffs, ceased such operations, and was engaged only in collecting, transporting and delivering to the purchaser scrap from the abandoned portion of the road, using its own facilities for that purpose as the road was gradually dismantled.

Since the above facts appear substantially in the complaint, the several defendants demurred thereto as not stating a cause of action; and at the same time answered, setting up the abandonment of the line as a carrying road, and the fact that the offer to list the property within the county for local taxation had been rejected.

The matter came on for a hearing before Hon. Jeff D. Johnson, Jr., Special Judge of the Superior Court, at March Civil Term, 1943, of Wake Superior Court, upon an agreement that the judge might hear and determine the case without the intervention of a jury. Reserving action on the demurrers without prejudice to the defendants, Judge Johnson proceeded to hear the case on the merits.

The evidence tended to show that the receivers of the Norfolk Southern Railroad Company obtained from the Interstate Commerce Commission an order, effective 2 September, 1940, authorizing them to abandon the line running from Edenton to Suffolk, of which the road in controversy is a part; that the receivers thereupon canceled all tariffs and ceased their publication on or about 21 September, 1940, and did not thereafter operate the road as carriers. That the rails had been sold as scrap, and were being torn up from the roadbed, and transported and delivered to the purchaser, the receivers using their own facilities upon the road for this purpose only, as the roadbed was gradually dismantled.

Upon motion of the defendants, made at the conclusion of the plaintiffs' evidence and of all the evidence, judgment was entered that "the plaintiffs be, and they are hereby nonsuited and this action is dismissed." From this judgment the plaintiffs appealed. The members of the State Board of Assessment and other defendants renewed in this Court, *ore tenus,* their demurrer to the complaint as not stating a cause of action.

*W. D. Pruden* for plaintiffs, appellants.

*Attorney-General McMullan* and *Assistant Attorney-General Patton* for State Board of Assessment, appellee.

*R. N. Simms* and *Robt. N. Simms, Jr.,* for Receivers of Norfolk Southern Railroad Company and for Norfolk Southern Railway Company, defendants, appellees.

SEAWELL, J. The complaint is a model of conciseness and fairness. It was obviously the purpose of the pleader to strip the case of non-essentials and bring the controversy to the real issue—at most a narrow one—upon facts about which there could be no dispute. But the peculiar nature of the remedy sought, in view of the frank statements in the complaint, renders plaintiffs' case vulnerable in two aspects: On the question whether they have the right to be heard at all in the attempted relitigation· of a matter already heard by a competent tribunal on the merits; and, if that obstacle is hurdled, whether the status of the railroad line at the taxable date, as described by the plaintiffs, brings it within the jurisdiction of the State Board of Assessment under applicable law. Machinery Act of 1939, ch. 310; Public Laws 1939, sec. 1612, *et seq.;* Michie's Code, 1939, sec. 7971 (193), *et seq.*

While the plaintiffs' cause was heard independently on the merits, and action on the demurrers was reserved without prejudice to the defendants, the demurrer, *ore tenus,* renewed in this Court would bring both these questions up for decision. *Raleigh v. Hatcher,* 220 N. C., 613, 616, 18 S. E. (2d), 207; *Gurganus v. McLawhorn,* 212 N. C., 397, 193 S. E., 844; *Staley v. Park,* 202 N. C., 155, 156, 162 S. E., 202. It is hardly necessary, however, to give the plaintiffs' position two fatal blows—by sustaining both demurrer and judgment on the merits; so we follow the pattern of the trial. It is not amiss to say, however, that *mandamus* is not a proper instrument to review or reverse an administrative board which has taken final action on a matter within its jurisdiction. *Pue v. Hood, Comr. of Banks,* 222 N. C., 310, 22 S. E. (2d), 896. If there has been an error in law, prejudicial to the parties, or the board has exceeded its authority, or has mistaken its power, or has abused its discretion—where the statute provides no appeal—the proper method of review is by *certiorari. Belk's Dept. Store, Inc., v. Guilford County,* 222 N. C., 441, 446, 23 S. E. (2d), 897; *Power Co. v. Burke County,* 201 N. C., 318, 160 S. E., 173; *Caldwell County v. Doughton,* 195 N. C., 62, 141 S. E., 289. Subject to the right to review in this Court as it may exist under proper procedure, the final action of the Board will be held to be conclusive, and will be given effect in a subsequent proceeding involving the same matter.

However, on the hearing on the merits, plaintiffs' petition for *mandamus* was properly denied. Speaking now not of the receivers, or representatives of the new company which has taken over the railroad properties for operation, who are not public officers and are not subject to *mandamus* to compel the performance of a private duty, but speaking of the members of the Board of Assessment who are public officers, *mandamus* is a proper remedy to compel the performance of a public duty of a ministerial nature, when this duty has been neglected or declined. There is no doubt that where the right to the writ has not been clouded by previous resort to other remedy, it will issue to compel the State Board of Assessment to perform the ministerial duties imposed upon them by the statute—but not to control them in the exercise of any discretion. The initial step of assuming jurisdiction over the railroad lines of common carriers may be regarded as ministerial, and the duty of reporting to each of the several counties its quota of the total valuation accruing to the mileage within it is of a like character.

But the *mandamus,* while no longer regarded as a high prerogative writ—as was its common law status—*Person v. Watts,* 184 N. C., 499, 505, 115 S. E., 336—will not be issued unless the petitioner has shown a clear legal right to the writ. *Poole v. Board of Examiners,* 221 N. C., 199, 19 S. E. (2d), 635; *Champion v. Board of Health,* 221 N. C., 96, 19 S. E. (2d), 239; *Harris v. Board of Education,* 216 N. C., 147, 4 S. E. (2d), 328; *Raleigh v. Public School System, ante,* 316, 26 S. E. (2d), 591. Certainly it will not issue where upon the face of the petition or upon the facts disclosed in the evidence, the plaintiffs have no right to the relief they seek to obtain by such mandatory means. The ministerial duty, as well as the neglect or refusal to perform it, must clearly appear, since a peremptory *mandamus* is a writ of enforcement—or in the nature of an execution of the judgment of the Court. *Powers v. Asheville,* 203 N. C., 2, 164 S. E., 324; *Cody v. Barrett,* 200 N. C., 43, 156 S. E., 146; *White v. Commissioners of Johnston County,* 217 N. C., 329, 7 S. E. (2d), 825; *Mears v. Board of Education,* 214 N. C., 89, 197 S. E., 752.

We agree with the court below that the evidence may be regarded as showing a definite abandonment of the road with respect to the common carriage of freight and passengers, and that its use in the removal and transportation of scrap material during the process of dismantling and salvage did not vest it with a character which would bring it within the jurisdiction of the State Board of Assessment for appraisal and taxation. We are assured of the correctness of this position on examination of the statute under which the State Board of Assessment exercises its duties, with special attention to the general purpose of the Act, especially the provisions regarding the apportionment of the total taxable

value to the counties in the proportion that the mileage therein sustains to the total length of the road with which it is assessed. Sec. 1613; Michie's Code of 1939, sec. 7971 (194). In such total valuation is included the franchise which, with respect to the abandoned road, no longer exists and which, when the tariffs are canceled, cannot be exercised. Furthermore, the deterioration in value of the road itself, thus separated from its uses, would make the equation demanded by the statute so inequitable as to lead to the conclusion it was not intended by the law.

At various other places we find reference in the statute indicating that the law refers to roads in actual operation; and we have come to the conclusion that a road thus definitely abandoned and retired from the operative system, after a proper order respecting the convenience and necessity of its further operation as a carrying road has been granted for such abandonment, is no longer within the purview of the statute.

The listing of this property is the care of the local authorities. We might say here that the order of the State Board of Assessment that the local boards list the property as "scrap" is not binding upon them in so far as it characterizes the nature of the property. In the listing and the assessment of this property, they are to be guided by the same laws which apply to other property within their respective jurisdictions. It may be well to say, however, that since we consider the road as definitely abandoned as a part of the operating system, and no more to be used as a carrying road, the property is not to be enhanced by attributing to it any element of value arising from that source. Otherwise, the result would simply be to transfer the jurisdiction from the State Board of Assessment to the local boards of appraisal, to be exercised upon similar considerations of value. This would be manifestly improper.

The judgment is
Affirmed.