IN THE MATTER OF HOMER DURANT TRUITT, a Minor, by and Through his Mother, NIKKA H. TRUITT

AND

IN THE MATTER OF DARRELL C. TRUITT.

(Filed 20 January, 1967.)

1. **Animals § 4—**

Under the 1933 amendment to G.S. 67-13, applicable to Forsyth and Guilford Counties, the appeal to the Superior Court from the denial by the County Commissioners of a claim for injuries inflicted by a dog is *de novo.*

2. **Same—**

Injury inflicted by a dog, whether caused by a playful or angry animal, may be made the basis of a claim under G.S. 67-13.

3. **Same; Taxation § 7—**

The tax levied on the owner or keeper of a dog over six months of age, G.S. 67-5, has been declared valid and constitutional, and its validity perforce extends to the expenditure of the funds, it being the purport of the statute that the funds raised by the tax should be used for school pur-

poses subject to valid claims, established in the manner provided by the Act, for injuries and damages caused by dogs.

4. Statutes § 4—

Constitutionality of a statute will be presumed until the contrary clearly appears.

5. Infants § 5—

Payment of a claim asserted on behalf of an infant should be made to the infant's duly appointed guardian.

APPEAL by Guilford County from *Crissman, J.,* June 13, 1966 Civil Session (High Point Division) GUILFORD Superior Court.

This proceeding involves two claims filed before the Board of Commissioners of Guilford County for injury caused by a dog owned by Mrs. Wanda B. Williams: (1) Homer Durant Truitt, age five years, suffered an eye injury; (2) Darrell C. Truitt, father, paid, or obligated himself to pay, medical expenses for treating the injury. The infant's claim was filed by his mother.

Gary Truitt, older brother of the injured boy, described the manner in which his brother was injured: "As to what happened as we were leaving this area . . . my sister was in front of me, and I was in front of Homer. Then I heard him scream, and I turned around and seen *(sic)* the dog coming down from his face. The dog's paws were on his chest. The dog was a big brownish-white collie. . . . When . . . I heard Homer scream . . . I didn't see his face because he had his back turned . . . There was a scar under his eye — a scratch." The dog had been around the children for some time. The nature of the injury — a single perforation above the pupil and a tear downward, continuing as a scratch on the lower eyelid, would seem to indicate the injury was caused by a claw rather than by a tooth; and the dog was friendly and playful rather than otherwise. This view is supported by the older brother's statement the dog had his paws on Homer's chest when Homer screamed.

Dr. W. B. Donald testified: "Examination at that time revealed a . . . perforating laceration of the left eye. . . . It tore down across the front of the eye; it entered just above the outer edge of the pupil, and it tore all the way across the clear window in the front of the eye." The injury severely impaired the function of the eye.

At the conclusion of the hearing, the Board of Commissioners of Guilford County ruled that the claims should be denied in their entirety. The claimant gave notice of appeal to the Superior Court. The clerk to the Board of Commissioners certified the record to the Superior Court.

After the appeals were docketed in the Superior Court a pre-

trial conference was held by Judge Crissman. The Board of Commissioners insisted that the statute which provides for payment violates the provisions of the North Carolina Constitution. "(T)his statute prescribes a use of tax money for something that would not be considered a necessary expense. It is not for the general public; it is for a specified individual, as distinguished from benefiting the general public." The Board of Commissioners entered a demurrer *ore tenus*.

By stipulation, Judge Crissman agreed to postpone his ruling on the constitutional question until after a trial of the issues of damages. The hearing was *de novo*.

After the trial the jury awarded the infant $5,000.00 and the father $1,300.00 expenses for medical treatment. The court entered judgment that Guilford County pay the awards and costs out of the dog tax fund. As a part of the judgment, the court entered the following:

> "Upon consideration of arguments of counsel for the plaintiff and counsel for Guilford County, it is ORDERED that Guilford County's motion to dismiss the plaintiff's action for the reason that G.S. Sec. 67-13 is violative of the Constitution of North Carolina, be, and the same hereby is overruled."

The Board of Commissioners excepted and appealed.

*Smith, Moore, Smith, Schell & Hunter by Bynum M. Hunter, Ralph Walker for appellant Guilford County, respondent.*
*Schoch, Schoch & Schoch by Arch K. Schoch, Jr., for claimant appellee.*

HIGGINS, J.  The General Assembly, by G.S. 67-5, has provided every owner or keeper of a dog over six months of age shall pay an annual license or privilege tax of $1.00 or $2.00 depending on the sex of the dog. G.S. 67-13 provides: "The money . . . shall be applied to the school funds: Provided, it shall be the duty of the county commissioners . . . upon satisfactory proof of such injury, including necessary treatment, if any, and all reasonable expenses incurred, the said county commissioners shall order the same paid out of any moneys arising from the tax on dogs as provided for in this Article. . . ."

Of the several amendments to G.S. 67-13, only Ch. 547, Session Laws of 1933, applicable to Forsyth and Guilford Counties, is material to the present controversy. This amendment gives a claimant the right of appeal from the Commissioners to the Superior Court, "as in cases of appeals from a justice of the peace." Hence

the trial in the Superior Court is *de novo* and not on the record. *Belk's Department Store v. Guilford County,* 222 N.C. 441, 23 S.E. 2d 897.

The dog tax is assigned to the county school fund: *Provided,* when complaint is made of injury to any person by any dog (including cost of treatment), and the amount of the damage is established in the manner provided by the Act, the county commissioners "shall order the same paid out of any moneys arising from the tax on dogs . . ." The meaning seems obvious that the school fund gets the dog tax subject to valid claims for injury and damage caused by dogs when the same have been established in the manner provided by the Act. Hence, the tax money is earmarked as the source, and the only source, out of which payment of claims may be made. Whether the injury was caused by a playful or an angry act on the part of the dog would be without significance. The injury was caused by the dog in either event.

A levy of a license or privilege tax on dogs has been held valid in many decisions of this Court: *Mowery v. Salisbury,* 82 N.C. 175; *Newell v. Green,* 169 N.C. 462, 86 S.E. 291; *Board of Commissioners v. George,* 182 N.C. 414, 109 S.E. 77; *McAlister v. Yancey County,* 212 N.C. 208, 193 S.E. 141; *White v. Commissioners of Johnston County,* 217 N.C. 329, 7 S.E. 2d 825. The taxing act having been held valid and its main objective being to create a fund to pay damage caused by dogs, is not the purpose valid? Any amount left over after the payment of damage claims which have been determined and satisfied shall go to the school fund. Since the levy for the stated purpose has been declared valid and not in contravention of the State Constitution, it seems clear the validity extends to the expenditure of the funds for the stated purpose. Constitutionality will be presumed until the contrary clearly appears. *Milk Commission v. Galloway,* 249 N.C. 658, 107 S.E. 2d 631.

A number of other states have passed acts levying a license tax on dogs for the benefit of a fund out of which to pay damages caused by dogs. All appear to have been held valid. *McQueen v. Kittitas County,* 198 P. (Wash.) 394; *McGlone v. Womack,* 129 Ky. 274, 111 S.W. 688, 17 L.R.A. 855; *Randall v. Patch,* 118 Me. 303, 108 A. 97, 8 A.L.R. 65; *Hofer v. Carson,* 203 P. (Ore.) 323; *State v. Anderson,* 234 S.W. (Tenn.) 768; *Mountain Timber Co. v. State of Washington,* 243 U.S. 219.

We call attention to the record which fails to show the legal authority by which the mother asserts the claim in behalf of the infant. Both parties, however, have treated the case on the theory that the parties are proper and the claim properly before the court. *Morris v. Gentry,* 89 N.C. 248. Of course, the Board of Commis-

sioners may pay the claim into court where it will be paid only on a showing of right to receive it. Payment of the infant's claim should be made to a duly appointed guardian.

No error.